(No. 64465.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MARK F. CHANDLER, Appellant.

*Opinion filed June 19, 1989.—Rehearing
denied September 29, 1989.*

RYAN and MILLER, JJ., dissenting.

Charles M. Schiedel, Deputy Defender, and Peter L. Rotskoff, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert Ruiz, Solicitor General, and Terence M. Madsen and Arleen C. Anderson, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE STAMOS delivered the opinion of the court:

The defendant, Mark Chandler, was convicted in a jury trial in the circuit court of Sangamon County of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1), residential burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—3), and arson (Ill. Rev. Stat. 1985, ch. 38, par. 20—1). Defendant waived his right to a jury at the sentencing hearing, and the trial judge found him eligible for the death penalty and imposed the death sentence for the murder convic-

tion. Defendant's execution was stayed pending direct review by this court. Ill. Const. 1970, art. VI, §4(b); 107 Ill. 2d Rules 603, 609(a).

Defendant was arrested on January 17, 1986, after giving a statement admitting his involvement in the offenses at issue. In his statement, to which a police officer testified at the trial, defendant stated that he, along with a codefendant (who was granted a separate trial), broke into the victim's home during the early hours of January 16, 1986. Defendant stated that he ransacked the first floor of the victim's house and that his codefendant went to the second floor of the house. Defendant said that after coming downstairs and saying that there was a woman upstairs, his codefendant went back upstairs with a knife from the kitchen. According to defendant's statement, he then started to go upstairs and saw his codefendant come out of the victim's bedroom and heard him state that "it's too late." Defendant stated that they both then took some items from the house and left the residence. Defendant further told police that he and his codefendant returned to the victim's house later that morning with a can of lighter fluid in an attempt to obliterate fingerprints from the residence by setting it on fire.

The following day, defendant initially recanted his prior statements and denied involvement in the perpetration of the offenses, but subsequently admitted the truth of his prior statements when he was told by the police that they could establish that he was in fact involved. He continued to deny that he had stabbed the victim. Defendant also told the police that a necklace taken from the victim's house was hidden in the basement of his parents' residence, where he lived. He also revealed the location of other items taken during the break-in, which police subsequently recovered.

Both defendant and his codefendant were charged by information with four counts of murder, one count of residential burglary, and one count of aggravated arson. At the instructions conference, the instructions were amended so that the jury could find defendant guilty or not guilty of arson. The trial court granted their joint motion to sever their trials.

When police were called to the victim's house on the morning of January 16, 1986, by the victim's daughter, they discovered evidence of a fire in the living room of the house. A fire investigator for the Springfield fire department testified that the fire had been intentionally set. The victim was found lying on her bed in an upstairs bedroom of the house. Testimony given at defendant's trial revealed that the cause of death of the victim, a 78-year-old woman who was the owner of the house, was two fatal stab wounds in the chest.

Defendant's girlfriend testified that defendant told her, on the afternoon of January 16, 1986, that he had killed the victim. The State also presented the testimony of two former cellmates of defendant who testified that he had told them that he killed the victim.

Defense counsel presented no witnesses, and defendant did not testify, despite defense counsel's representation to the jury in his opening statement that defendant would testify at trial.

The State, in its closing argument, argued that defendant was guilty of murder, either as the person who actually wielded the knife or as an accomplice to a forcible felony in which the victim was killed. As the prosecutor pointed out to the jury, under the law of accountability, "there is no doubt that this defendant caused the death of Florence Hatch, even if you take the defendant's story to the police that all he did was burglarize and that [the codefendant] did the killing."

Defense counsel, in his closing argument, while apparently conceding the fact that defendant entered the victim's house, argued that defendant did not stab the victim but that defendant's codefendant stabbed the victim, causing her death. He concluded, "I don't think if you take a realistic view of this that you can find defendant guilty of murder."

Following closing arguments, the jury was instructed on accountability (Illinois Pattern Jury Instructions, Criminal, No. 5.03 (2d ed. 1981)), and murder, including felony murder (Illinois Pattern Jury Instructions, Criminal, Nos. 7.01, 7.02 (2d ed. 1981)). The jury returned a general verdict finding defendant guilty of murder, residential burglary and arson. Defendant waived a jury for his sentencing hearing.

The State sought the death penalty. At the eligibility phase, after presenting evidence that defendant was over the age of 18, the State argued that defendant's murder and residential burglary convictions made defendant eligible for the death penalty under section 9—1(b)(6) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6)).

Defense counsel introduced no evidence at this phase of the sentencing hearing, and did not argue that defendant's codefendant, rather than defendant, had inflicted the victim's fatal wounds. Defense counsel did argue, however, that defendant was not eligible for the death penalty because residential burglary is not among the enumerated felonies which support eligibility for death under section 9—1(b)(6)(c). The State responded by contending that because burglary, a felony listed in the statute, is a lesser included offense of residential burglary, defendant was eligible for death under this statutory aggravating factor. Although the trial court expressed concern that defendant had not been convicted of one of the statutorily enumerated felonies supporting

eligibility for the death penalty, the court found defendant eligible for the death penalty by holding that burglary is a lesser included offense of residential burglary.

At the second phase of the death penalty hearing, the State introduced in aggravation, and the trial court took judicial notice of, the presentence investigation report, which listed the history of defendant's juvenile adjudications and adult convictions; the report also contained a three-page victim impact statement written by the victim's daughter. The State also introduced certified copies of defendant's adult convictions for burglary, criminal damage to property, theft, and attempted theft.

Defense counsel called defendant's mother as a witness in mitigation. He also introduced defendant's records from the Springfield Mental Health Center and defendant's report cards from grade school and high school. Defense counsel also introduced the statements of two persons who had been cellmates of defendant's codefendant while the codefendant was imprisoned at the Sangamon County jail. Their statements revealed that defendant's codefendant had admitted to killing the victim.

The trial court, without specifying any factors it relied on in making its decision, found that no mitigating factors sufficient to preclude imposition of the death penalty existed, and sentenced defendant to death. The court also sentenced defendant to an extended term of 30 years' imprisonment for residential burglary, and an extended term of 14 years' imprisonment for arson.

A hearing was held on May 15, 1987, on defendant's post-sentencing motion which had been filed on February 11, 1987. The trial court vacated defendant's 14-year sentence for arson and imposed a seven-year sentence on the arson conviction. The trial court denied all other relief sought by defendant.

Defendant first contends that his convictions for murder, arson and residential burglary must be overturned because he was denied his sixth amendment right to effective assistance of counsel when his trial attorney conceded defendant's guilt at trial during his opening and closing arguments.

In his opening argument, defense counsel told the jury, "I can say I think candidly there's only really two people know [*sic*] what happened in the Florence Hatch house on the night of January 15th and the early morning hours of January the 16th and that's the defendant and his co-defendant."

During his closing argument, defense counsel told the jury:

> "[H]is [defendant's] statement is consistent after he decided that he was going to help—after he decided that he wanted to admit his participation to some degree as to what he did or did not do in reference to this event \*\*\* Well, he didn't have to tell [the police] and he didn't have to tell them the truth, but he did and that is a consistent pattern of what his statement was all about.
>
> Now, I don't know that there is any argument since he made the statement to Detective Mitchell that he entered the house. Whether this is going to constitute residential burglary or not, which is a legal charge—is something that you will have to find in the jury room, but the testimony is consistent in terms of what his statement was and what they produced in the way of what their witnesses said \*\*\* [i]t is consistent with the truth."

The State initially argues that defendant has waived review of this claim by failing to raise it in a written post-trial motion. See *People v. Enoch* (1988), 122 Ill. 2d 176, 185-91; *People v. Gacho* (1988), 122 Ill. 2d 221, 239.

We note that defendant did file a timely post-sentencing motion on February 11, 1987, although the motion did not allege that defendant's trial counsel had been ineffective. The motion was signed, however, by the de-

fense counsel who defendant now alleges was ineffective. The record of the hearing on the post-sentencing motion indicates that defendant's trial counsel prepared the motion in "consultation" with the Appellate Defender's office. In light of the fact that the same attorney who defendant now alleges deprived him of his constitutional right to effective assistance of counsel signed the motion, and argued it before the trial court, and the fact that the error complained of is substantial and of constitutional magnitude, we will review defendant's claim under our plain error rule. 107 Ill. 2d R. 615(a); see *People v. Enoch* (1988), 122 Ill. 2d 176, 190; *People v. Crews* (1988), 122 Ill. 2d 266, 275.

A defendant alleging a violation of his sixth amendment right to effective assistance of counsel must generally meet the two-pronged test announced by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, in order to establish a valid claim. *Strickland* requires a defendant to prove (1) that his counsel's performance was deficient by having made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth amendment, and (2) that his counsel's deficiencies prejudiced the defendant. (*Strickland*, 466 U.S. at 687, 80 L.Ed. 2d at 693, 104 S. Ct. at 2064; see *People v. Albanese* (1984), 104 Ill. 2d 504, 526-27.) To prove this, a defendant must show that his counsel's errors were so serious that they deprived the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

The Court also emphasized that scrutiny of counsel's performance must be highly deferential, noting that "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reason-

able professional assistance." *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.

In a companion case to *Strickland*, the Court indicated that in rare instances, ineffectiveness of counsel will be presumed without application of the *Strickland* test. (*United States v. Cronic* (1984), 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039.) As this court has recognized, the Supreme Court in *Cronic* "emphasized that the sixth amendment requires, at a bare minimum, that defense counsel act as a true advocate for the accused. Where 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable.' " (*People v. Hattery* (1985), 109 Ill. 2d 449, 461, quoting *United States v. Cronic* (1984), 466 U.S. 648, 659, 80 L. Ed. 2d 657, 668, 104 S. Ct. 2039, 2047.) Relying on *People v. Hattery* (1985), 109 Ill. 2d 449, defendant argues that defense counsel's actions constitute a failure to subject the prosecution's case to meaningful adversarial testing and that, under *Hattery*, his convictions must be reversed.

In *Hattery*, without applying the *Strickland* test, this court found that a defendant's sixth amendment right to effective assistance of counsel was violated. Following a jury trial, the defendant in *Hattery* was convicted of murder and sentenced to death. In his opening statement to the jury, one of defendant's attorneys stated:

" 'Ladies and gentlemen of the jury, he [defendant] did it. He did everything [the prosecution] just told you. ***

We are not asking you to find Charles Hattery not guilty. At the end of your deliberations, you will find him guilty of murder. We are asking you to consider the evidence that you hear today and in the next few days to explain why he did the horrible thing that he did. Once you have found him guilty, we will proceed and you will find

him eligible for the death penalty. The question, and the only question facing you, will be whether to impose the death penalty on Charles Hattery for trying to save the life of his family.' " (Emphasis omitted.) *Hattery*, 109 Ill. 2d at 458-59.

Defense counsel in *Hattery* presented no evidence at trial and did not make a closing statement to the jury. Through cross-examination of the State's witnesses, defense counsel attempted to develop the theory that the defendant was compelled to kill the victims. Additionally, several times during the guilt-innocence phase of the trial, defense counsel conceded that the defendant was truthful when he confessed to the police.

This court found that defense counsel's actions constituted a denial of the defendant's sixth amendment right to counsel and reversed the defendant's convictions and sentences even though the defendant made no showing of prejudice under the *Strickland* test. After noting the United States Supreme Court's pronouncement in *Strickland* that there are some circumstances so likely to prejudice a defendant that prejudice need not be shown but will be presumed (*Hattery*, 109 Ill. 2d at 461, citing *Strickland*, 466 U.S. at 692, 80 L. Ed. 2d at 696, 104 S. Ct. at 2067), the court, relying on *Cronic*, held that the actions of the defense counsel in *Hattery* did not subject the prosecution's case to the meaningful adversarial testing required by the sixth amendment. (*Hattery*, 109 Ill. 2d at 464.) The court held that defense counsel's actions had violated the defendant's sixth amendment right "of having the issue of his guilt or innocence presented to the jury as an adversarial issue." *Hattery*, 109 Ill. 2d at 464.

The court also stated that there was no evidence that the defendant had consented to his attorneys' actions, and that "such consent will not be presumed from a silent record." (*Hattery*, 109 Ill. 2d at 464, citing *Boykin*

*v. Alabama* (1969), 395 U.S. 238, 244, 23 L. Ed. 2d 274, 280, 89 S. Ct. 1709, 1712-13.) The court rejected the State's argument that defense counsel's actions conceding the defendant's guilt were sound strategic decisions because the evidence of defendant's guilt was overwhelming. The court held that once the decision to stand trial has been made, counsel must put the prosecution to its burden of proving defendant guilty beyond a reasonable doubt, unless the record adequately shows that defendant knowingly and intelligently consented to counsel's strategy. *Hattery*, 109 Ill. 2d at 465.

We must initially decide whether the circumstances of this case bring it within the holding of *Hattery*, or whether defendant must meet the *Strickland* test. Defendant argues that his trial counsel's closing argument demonstrates nothing more than a complete concession of defendant's guilt to all three offenses charged in the information. We disagree. Unlike counsel's remarks in *Hattery*, which clearly amounted to an unequivocal concession, counsel's remarks here did not completely and unequivocally concede defendant's guilt.

*Hattery* was also based on the effect of counsel's comments on the jury. The court stated that "[t]he comments by defense counsel during the guilt-innocence phase that the trial was a 'death penalty' case further impressed upon the jury the false notion that the guilt or innocence of the defendant *** had already been decided." (*Hattery*, 109 Ill. 2d at 464.) In this case, on the other hand, counsel stated in his closing argument that "whether this is going to constitute residential burglary or not, which is a legal charge—is something that you will have to find in the jury room." Counsel admitted only what defendant had already confessed to, and the jury heard a police officer testify to defendant's statements. Counsel vigorously argued that the jury should believe everything that defendant told the police, includ-

ing defendant's denial of killing the victim, and did not concede any fact to which defendant did not admit in his statements to the police. We have held that similar admissions by counsel do not fall under the *Hattery* rule. See *People v. Emerson* (1987), 122 Ill. 2d 411, 428-31.

Moreover, this court has recently stated that *Hattery* did not hold that it is *per se* ineffectiveness of counsel whenever an attorney concedes his client's guilt to offenses and the record fails to show the client's consent, if there is overwhelming evidence of that guilt. (*People v. Johnson* (1989), 128 Ill. 2d 253, 269.) The court noted that "if a concession of guilt is made, ineffectiveness may be established; however, the defendant faces a high burden before he can forsake the two-part *Strickland* test." (*Johnson* (1989), 128 Ill. 2d at 269-70.) Although we do not believe that counsel's statements, standing alone, warrant forsaking the *Strickland* test under the *Hattery* analysis, we do believe that counsel's performance as a whole, when viewed under the *Strickland* test, amounted to ineffective assistance of counsel.

A defendant alleging ineffective assistance of counsel not only must show that his counsel's performance was deficient and that the deficient performance prejudiced him, but also must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of a proceeding would have been different." (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) We believe that defendant has met this burden.

Defendant was charged with four counts of murder, including felony murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(3)). Counsel's apparent strategy was to convince the jury, in closing argument, to believe defendant's denial, in his statements to the police, of killing the victim. This strategy was the basis of counsel's deficiency. Counsel did not attempt to develop a theory of innocence dur-

ing his cross-examination of several witnesses, and did not cross-examine several key witnesses at all. Moreover, counsel presented no witnesses on behalf of the defense and failed to call defendant to the stand even though he had stated in his opening argument that defendant would testify and tell the jury what he did and did not do. Defense counsel apparently mistakenly believed that the jury could find defendant not guilty of murder if they believed that he had not inflicted the fatal wounds to the victim. Indeed, defense counsel concluded his closing argument by telling the jury, "I don't think if you take a realistic view of this that you can find Mark Chandler guilty of murder." The jury, however, having been instructed on both felony murder and accountability, had no choice but to find defendant guilty of murder, residential burglary and arson.

The jury could have returned a not-guilty verdict on the charged offenses only if it had chosen to disregard the jury instructions. Counsel had admitted that defendant was telling the truth in his statements to the police, and that he had broken into the victim's house. The ultimate error of counsel's strategy, however, is revealed by the fact that even if counsel had succeeded in persuading the jury that defendant did not stab the victim, the jury was still instructed to find defendant guilty of murder under the law of accountability or felony murder.

This court has repeatedly held that, to be guilty of felony murder, a defendant need not be the one who inflicted the fatal wounds to the victim of the underlying felony. (See *People v. Hickman* (1974), 59 Ill. 2d 89; *People v. Smith* (1974), 56 Ill. 2d 328; *People v. Allen* (1974), 56 Ill. 2d 536.) Here, the defendant confessed to taking items from the victim's home, along with his codefendant, after breaking into the house with his codefendant. In *People v. Smith* (1974), 56 Ill. 2d 328, this court upheld the defendant's felony murder conviction against

defendant's contention that the felony murder statute should not apply when the victim died after jumping out a window to escape from the defendant. The court held that "[i]t is unimportant that the defendant did not anticipate the precise sequence of events that followed upon his entry into the apartment of [the victim]. His unlawful acts precipitated those events, and he is responsible for the consequences." (*Smith*, 56 Ill. 2d at 333-34.) This court has also held, in citing favorably to the committee comments to section 9—1, that it was the intent of the legislature to incorporate the holding of this court's earlier decision in *People v. Payne* (1935), 359 Ill. 246, into our current murder statute. (*People v. Allen* (1974), 56 Ill. 2d 536, 545.) The comments, based on *Payne*, state: "It is immaterial whether the killing in such a case is intentional or accidental, or is committed by a confederate without the connivance of the defendant *** or even by a third person trying to prevent the commission of the felony." Ill. Ann. Stat., ch. 38, par. 9—1, Committee Comments, at 16 (Smith-Hurd 1979); see *People v. Hickman* (1974), 59 Ill. 2d 89, 92-93.

Defense counsel's performance left the jury with no choice but to convict defendant of the offenses charged. This constitutes ineffective assistance of counsel. In *United States ex rel. Barnard v. Lane* (7th Cir. 1987), 819 F.2d 798, the court noted that "[t]he spectrum of counsel's legitimate tactical choices does not include abandoning a client's only defense in the hope that a jury's sympathy will cause them to misapply or ignore the law they have sworn to follow." (*Lane*, 819 F.2d at 805.) The court in *Lane* found that counsel's failure to submit a jury instruction that would have allowed the jury in that case to convict defendant of manslaughter instead of murder constituted ineffective assistance of counsel.

Although defense counsel was faced with a difficult case, his performance was clearly deficient. Counsel

chose not to cross-examine several key prosecution witnesses, including Detective Thomas Mann, who testified to defendant's incriminating statements to the police. Counsel's cross-examination of other witnesses was extremely cursory. Moreover, he called no witnesses to testify, not even defendant, despite his assertion in his opening statement that defendant would testify and tell the jury what he did and did not do. By failing to comprehend the law of accountability and felony murder, counsel's strategy and actions amounted to no real defense at all. The prosecution's case, therefore, was not subject to meaningful adversarial testing, and defendant was deprived of a fair trial.

Nor can defense counsel's actions be viewed as an attempt to preclude the imposition of the death penalty. If counsel had been attempting to portray defendant as less than a cold-blooded murderer in order to dissuade at least a single juror from voting to impose the death penalty, which would preclude imposition of the death penalty on defendant, due to the statute's unanimity requirement (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(g)), defense counsel would not have advised defendant to waive the jury for the sentencing hearing, which defendant did. The jury waiver, therefore, negated any benefit based on a theory of jury sympathy.

Likewise, counsel's actions cannot be construed as a strategic decision to argue that defendant was ineligible for the death penalty, notwithstanding his murder conviction, because he did not actually kill or injure the victim. (See *People v. Gacho* (1988), 122 Ill. 2d 221, 263-64; *Tison v. Arizona* (1987), 481 U.S. 137, 95 L. Ed. 2d 127, 107 S. Ct. 1676.) Moreover, by not arguing this theory or presenting any evidence at the eligibility phase of the sentencing hearing to support this theory, counsel negated whatever value his prior concessions may have had.

Even when presented with a difficult case, counsel must provide reasonably effective assistance to a defendant. Counsel failed to do so here. Counsel's defective performance clearly prejudiced defendant, as the jury was forced to convict defendant of the offenses charged. We also find that there is a reasonable probability that but for counsel's deficient performance, the result of the trial would have been different. For all of these reasons, we find that defense counsel deprived defendant of his right to effective assistance of counsel.

Although we find that defendant's convictions must be reversed and his sentence vacated, we next consider defendant's contention that the trial court improperly found him eligible for the death penalty, as this issue may arise on remand. (*People v. Fierer* (1988), 124 Ill. 2d 176, 191; *People v. Wilson* (1987), 116 Ill. 2d 29, 42.) The trial court found defendant eligible for the death penalty under section 9—1(b)(6)(c) based upon his residential burglary conviction. Defendant argues that the trial court improperly found him eligible for the death penalty because residential burglary is not listed as one of the felonies specifically enumerated in the statute as supporting eligibility for the death penalty.

Defendant's eligibility for the death penalty was predicated upon the aggravating factor that the murder victim was killed in the course of a felony. (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6).) A defendant is eligible for the death penalty under this aggravating factor when:

> "the murdered individual was killed in the course of another felony if:
>
> (a) the murdered individual:
>
> (i) was actually killed by the defendant, or
>
> (ii) received physical injuries personally inflicted by the defendant substantially contemporaneously with physical injuries caused by one or more persons for whose conduct the defendant is legally account-

able under Section 5—2 of this Code, and the physical injuries inflicted by either the defendant or the other person or persons for whose conduct he is legally accountable caused the death of the murdered individual; and

\*\*\*

(c) the other felony was one of the following: armed robbery, robbery, aggravated criminal sexual assault, aggravated kidnapping, forcible detention, arson, aggravated arson, burglary, home invasion, or the attempt to commit any of the felonies listed in this subsection (c)." Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6).

At the eligibility phase of the sentencing hearing, defendant's counsel argued that defendant was ineligible for the death penalty because residential burglary was not an enumerated offense. The State asked the trial court to take judicial notice of defendant's convictions for murder and residential burglary, although not defendant's arson conviction. The State argued that burglary, a listed felony, is a lesser included offense of residential burglary, and that since defendant had been convicted of residential burglary, he had been proven guilty of burglary and was eligible for the death penalty. Admitting that it was operating in a "legal gray area," the trial court noted that the jury had not convicted defendant of any of the nine felonies listed in section 9—1(b)(6)(c), but concluded that because burglary is a lesser included offense of residential burglary, defendant was eligible for death.

Defendant argues that because the plain language of section 9—1(b)(6)(c) does not list residential burglary among the felonies which serve to qualify a defendant convicted of felony murder for death, the trial court improperly found defendant eligible for death. Defendant contends that courts must give effect to unambiguous statutory language without resorting to aids for construction of ambiguous statutes (*People v. Boykin* (1983),

94 Ill. 2d 138). Moreover, defendant argues, penal statutes should be strictly construed in favor of the accused. *People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366.

The State argues that residential burglary was omitted from section 9—1(b)(6)(c) through legislative oversight, and contends that to construe section 9—1(b)(6)(c) as allowing a defendant convicted of burglary to be eligible for the death penalty, when a defendant convicted of residential burglary is not, would lead to an absurd result. The State argues, therefore, that this court should construe the statute to include residential burglary, which the State contends it is reasonable to presume the legislature intended. The State also argues that because burglary is a lesser included offense of residential burglary, defendant was proven guilty of burglary and is therefore eligible for the death penalty.

We initially note that our discussion of this issue is guided by the realization that:

> "[a]ggravating factors serve as necessary prerequisites without which the death sentence cannot be imposed; they delineate the borderline between those cases in which death is a possible punishment and those in which it cannot be considered; because of their manifest importance, their scope must be somewhat more precisely marked than the suggestions of mitigating factors which the jury may weigh in cases where the death sentence is a possibility." *People v. Lewis* (1981), 88 Ill. 2d 129, 145.

See *Zant v. Stephens* (1983), 462 U.S. 862, 878, 77 L. Ed. 2d 235, 250-51, 103 S. Ct. 2733, 2743 ("statutory aggravating circumstances play a constitutionally necessary function at the stage of legislative definition: they circumscribe the class of persons eligible for the death penalty").

It is uncontested that section 9—1(b)(6)(c) does not list residential burglary among those felonies supporting eligibility for the death penalty. The State argues that

this is clearly a legislative oversight, since burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—1), a felony listed in the murder statute, is a Class 2 felony punishable by not less than three years and not more than seven years of imprisonment (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(5)), while residential burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—3), not listed in the statute, is a Class 1 felony, the sentence for which is not less than four years and not more than 15 years (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(4)).

The State argues that in construing the statute, we must assume that the legislature did not intend an absurd result; it is absurd, the State contends, that a defendant convicted of felony murder predicated upon burglary may be eligible for death while a defendant convicted of felony murder predicated upon residential burglary is not. The State correctly notes that the judiciary possesses the authority to read language into a statute which has been omitted through legislative oversight (*People v. Scott* (1974), 57 Ill. 2d 353, 358; see *People v. Parker* (1988), 123 Ill. 2d 204, 211), and that a court may properly consider not only the language used in the statute, but also the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved (*Parker*, 123 Ill. 2d at 209). These rules, however, are premised on the fundamental principle of statutory construction, which is to give effect to the intent of the legislature. *Parker*, 123 Ill. 2d at 209; *People v. Haywood* (1987), 118 Ill. 2d 263, 271.

A court's inquiry into the legislative intent behind a statute must necessarily begin with the language of the statute. (*People v. Hare* (1988), 119 Ill. 2d 441, 447.) This court has held that when the language of a statute is clear on its face, its meaning should be given effect without resort to supplementary principles of statutory construction. (*People v. Singleton* (1984), 103 Ill. 2d 339,

341.) Although it may seem peculiar that the legislature did not include residential burglary in the list of felonies which make a defendant eligible for death if the victim was killed during one of them, this court cannot uphold a death sentence through our affirmative act of reading the words "residential burglary" into the murder statute. (*Cf. People v. Wick* (1985), 107 Ill. 2d 62; *People v. Johnson* (1986), 114 Ill. 2d 69.) This is particularly true in the case of criminal statutes, which must be strictly construed in favor of the accused. (*People v. Parvin* (1988), 125 Ill. 2d 519, 525; *People v. Christensen* (1984), 102 Ill. 2d 321, 328.) This rule takes on even more significance in light of the capital nature of this case.

We note, parenthetically, that the legislature has acted at least twice in the last few years to amend section 9—1(b)(6)(c) to bring it into conformity with changes in the law. In section 1 of "An Act in relation to the offense of murder ***" (Pub. Act 82—1025, eff. Dec. 15, 1982 (amending Ill. Rev. Stat. 1981, ch. 38, par. 9—1(b)(6)(c))), the legislature inserted the words "aggravated arson" into the statute, and substituted the words "home invasion" for "or the taking of." Moreover, in section 2 of "An Act to create the offenses of *** aggravated criminal sexual assault ***" (Pub. Act 83—1067, eff. July 1, 1984 (amending Ill. Rev. Stat. 1983, ch. 38, par. 9—1(b)(6)(c))), the legislature substituted the words "aggravated criminal sexual assault" for "rape, deviate sexual assault." The State has failed to cite any legislative evidence that the legislature also intended residential burglary to serve as a death-qualifying crime.

In light of the fact that aggravating factors serve to tailor the law in a way that insures that the death penalty is not inflicted arbitrarily or capriciously, and that "[p]art of a State's responsibility in this regard is to define the crimes for which death may be the sentence in a way that obviates 'standardless [sentencing] discretion' "

(*Godfrey v. Georgia* (1980), 446 U.S. 420, 428, 64 L. Ed. 2d 398, 406, 100 S. Ct. 1759, 1764, quoting *Gregg v. Georgia* (1976), 428 U.S. 153, 195 n.47, 49 L. Ed. 2d 859, 887 n.47, 96 S. Ct. 2909, 2936 n.47), we find that the trial court erred in finding that defendant was eligible for the death penalty under section 9—1(b)(6)(c) based upon his conviction of residential burglary.

The State also argues that burglary is a lesser included offense of residential burglary and that because the jury found defendant guilty of residential burglary, he was also, as a matter of law, proven guilty of burglary, which is listed in section 9—1(b)(6)(c). We need not decide whether burglary is a lesser included offense of residential burglary, because if we accepted the State's argument that defendant was convicted of burglary as a lesser included offense of residential burglary, we would have to vacate defendant's conviction for burglary. This court has repeatedly held that "where more than one offense is carved from the same physical act" (*People v. King* (1977), 66 Ill. 2d 551, 566), judgment should be entered and sentence imposed only on the more serious offense (*People v. Lego* (1987), 116 Ill. 2d 323, 344; *People v. Mormon* (1982), 92 Ill. 2d 268, 270).

Defendant was sentenced to an extended term of 30 years' imprisonment for his residential burglary conviction. Because residential burglary is the more serious offense, being a Class 1 felony (Ill. Rev. Stat. 1985, ch. 38, par. 19—1) while burglary is a Class 2 felony (Ill. Rev. Stat. 1985, ch. 38, par. 19—1), the trial court was required to sentence defendant on the residential burglary conviction, rather than an implied conviction of the less serious, lesser included offense of burglary. As this court noted in *Lego*, "[w]hen multiple convictions are obtained for offenses arising out of a single act, sentence may be imposed only for the most serious offense." (*Lego*, 116 Ill. 2d at 344.) Moreover, any implied conviction of bur-

glary as a lesser included offense of residential burglary, arising from the same act, would have to be vacated. *Lego*, 116 Ill. 2d at 344; *People v. McCutcheon* (1986), 111 Ill. 2d 487, 494; *People v. Donaldson* (1982), 91 Ill. 2d 164, 170.

Defendant is therefore ineligible for the death penalty under section 9—1(b)(6)(c) based upon an implied conviction of burglary as a lesser included offense of residential burglary. As a trial court must sentence defendant on the more serious charge of residential burglary, the State cannot predicate eligibility for the death penalty under section 9—1(b)(6)(c) upon conviction of that crime, as we noted in our discussion above, because residential burglary is not listed in that statute. Furthermore, if we were to assume that defendant had been convicted of burglary as a lesser included offense of residential burglary, under the facts of this case, that conviction would have to be vacated. For all of these reasons, we find that the trial court erred in finding defendant eligible for the death penalty under section 9—1(b)(6)(c) based upon defendant's conviction of residential burglary.

Defendant raises a number of other arguments against his death sentence, but they involve questions that are unlikely to recur on retrial or questions that need not be considered in this appeal. For all of the above reasons, defendant's convictions are reversed and the sentence of death is vacated, and the cause remanded for retrial.

*Reversed and remanded.*

JUSTICE RYAN, dissenting:

I cannot bring myself to agree that the tactics of defense counsel which saved defendant from the death penalty constitute ineffective assistance. I therefore dissent.

In view of the overwhelming evidence against the defendant, it is obvious that defense counsel could not

have argued that his client was not involved in these crimes, or that he was at some other place doing something else at the time the crimes were committed. Given the evidence with which he was confronted, defense counsel had to admit the defendant's involvement and then had to attempt to minimize that involvement to the greatest extent possible. This counsel did by emphasizing that the defendant did not perform the act which killed the victim, but that the other party did. True, under these facts and the instruction of the court, the jury could find the defendant guilty of murder on the theory of accountability. However, it is not true, as the opinion states, that the jury "had no choice but to find defendant guilty of murder" under the defense counsel's admission and the instruction of the court. The jury always has a choice. It is the jury's duty to make the choice between guilty and not guilty. If the jury felt that the defendant should not be found guilty of murder because of his limited involvement, it could have found the defendant not guilty regardless of the admission of counsel and the instruction of the court.

The opinion also charges counsel's representation with being deficient in that he "did not attempt to develop a theory of innocence." How in the name of common sense could counsel, confronted with the evidence against the defendant in this case, attempt to develop a theory of innocence? The jury would have viewed such an attempt with great skepticism and counsel's credibility would have been destroyed. In *People v. Johnson* (1989), 128 Ill. 2d 253, 269, we noted that where there is overwhelming evidence of guilt and no defense, if counsel contests the charges he is liable to lose credibility with the jury on other issues.

The majority opinion discusses at length *People v. Hattery* (1985), 109 Ill. 2d 449. However, in *People v. Johnson*, we said that the rule in *Hattery* must be nar-

rowly construed. (*People v. Johnson* (1989), 128 Ill. 2d at 269.) As noted by the majority, we also stated in *Johnson* that *Hattery* did not establish a *per se* rule of ineffective assistance whenever defense counsel admits his client's guilt where there is overwhelming evidence. We also noted in *Johnson* that by giving too broad a construction to the holding in *Hattery*, defense counsel, as part of his strategy, could concede the defendant's guilt, assuring thereby a new trial for his client. I feel that the holding in *Johnson* compels this court to find that the defendant in this case was not denied effective assistance of counsel.

I am afraid that *Hattery* and the opinion in this case are telling defense counsel that when they are confronted with overwhelming evidence of guilt, they must lie or fabricate some defense no matter how overwhelming the evidence. We must not convey that message to the bar. There are cases, such as the one before us, where the best defense, indeed, possibly the only defense, is to minimize the defendant's involvement, hoping the jury will, in the exercise of mercy, find that the defendant should not be convicted or at least should not be sentenced to death. This is a judgment call that must be made by counsel. It is not an after-the-fact, hindsight, theoretic judgment to be made by this court.

The majority opinion notes that at the eligibility phase of the sentencing hearing, counsel argued that defendant was not eligible for the death penalty because residential burglary, of which defendant was convicted, was not one of the felonies named in the statute which specifies the felonies that qualify an accused for the death penalty if murder is committed in the course of one of the named offenses. The trial court did not agree with defense counsel's argument; however, the majority opinion in this court agrees with defense counsel and holds that the defendant is not eligible for the death pen-

alty. Thus, counsel, by his "ineffectiveness," saved his client from the death penalty. In addition, by the simple tactic of admitting the defendant's involvement in the offenses, which the majority opinion finds to be ineffective assistance, counsel gained for his client a new trial. Some "ineffective assistance"!

JUSTICE MILLER, also dissenting:

I do not agree with the majority's conclusion that the defendant was denied the effective assistance of counsel at trial, nor can I accept the majority's additional holding that the trial judge relied on an unavailable ground in finding the defendant eligible for the death penalty. Accordingly, I dissent from the court's decision reversing the defendant's convictions, vacating the sentence of death, and remanding the cause for a new trial.

I

Under the standard expressed in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, and adopted by this court in *People v. Albanese* (1984), 104 Ill. 2d 504, a criminal defendant who claims that counsel was ineffective must generally establish both a deficiency in counsel's performance and prejudice resulting from the deficiency. (*Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) There are, however, circumstances in which the effect of the violation is so clear that prejudice to the defendant may be presumed. *Strickland*, 466 U.S. at 692, 80 L. Ed. 2d at 696, 104 S. Ct. at 2067.

This court reached such a conclusion in *People v. Hattery* (1985), 109 Ill. 2d 449. In that case defense counsel acknowledged at trial that the defendant was guilty of the three murders with which he was charged; counsel's strategy was intended to show that the defendant had committed the crimes while acting under the

threat of compulsion, which is not a defense to murder but which may be sufficient as a mitigating circumstance to preclude a sentence of death. The court in *Hattery* held, "Counsel may not concede his client's guilt in the hope of obtaining a more lenient sentence where a plea of not guilty has been entered, unless the record adequately shows that defendant knowingly and intelligently consented to his counsel's strategy." (*Hattery*, 109 Ill. 2d at 465.) There was no showing of consent, and the court ruled that the strategy deprived the defendant "of the right of having the issue of his guilt or innocence presented to the jury as an adversarial issue." (*Hattery*, 109 Ill. 2d at 464.) Because the defense strategy was "an impermissible one," the court refused to consider whether the defendant was prejudiced as a result of counsel's representation. *Hattery*, 109 Ill. 2d at 464-65.

In this case, the defendant contends that trial counsel improperly conceded his guilt of the charges and that a new trial is therefore required under *Hattery*. The majority properly rejects the defendant's *Hattery* argument, holding that defense counsel did not make an unequivocal concession of his client's guilt. Having determined that counsel's performance did not violate *Hattery*, the majority goes on to consider, however, an argument that the defendant does not raise in the present appeal: that counsel was ineffective under the two-part standard contained in *Strickland*. In determining that the defendant was denied the effective assistance of counsel under the *Strickland* standard, the majority fails to consider whether the defendant was prejudiced as a result of counsel's performance and therefore reaches a result that is inconsistent with its earlier rejection of the defendant's *Hattery* claim.

Under *Strickland*'s two-part inquiry, a defendant must establish both that counsel's performance was deficient and that the deficiency was prejudicial. With re-

spect to the prejudice component of the test, *Strickland* advised, "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." (*Strickland*, 466 U.S. at 691, 80 L. Ed. 2d at 696, 104 S. Ct. at 2066.) To establish prejudice, a defendant alleging ineffective assistance of counsel "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

In this case, however, the majority opinion simply assumes, without discussion, that prejudice occurred. The court apparently bases its result on the notion that defense counsel's closing argument compelled the jury to convict the defendant of all the charges, if it was to follow its instructions faithfully. I do not believe that the jurors could have construed counsel's remarks as taking from them the question whether the defendant was guilty or innocent of the crimes. Defense counsel began his argument by reminding the jurors of the presumption of innocence and of the State's burden of proving guilt beyond a reasonable doubt. Responding to the State's contention that it was the defendant and not the accomplice who had committed the murder, defense counsel then sought to demonstrate that the State's theory of guilt was inconsistent with the defendant's statements to the police. In support of that argument, counsel referred to a number of points in which the defendant's confession had proved to be accurate. As the majority recognizes in rejecting the *Hattery* argument, counsel did not unequivocally concede the defendant's guilt at trial. Moreover, the evidence of guilt was overwhelming, and I do not believe that defense counsel's remarks to the jury

rendered the result of the trial unreliable. I would conclude that the defendant was not prejudiced as a result of counsel's argument, assuming that error occurred.

## II

I must also disagree with the majority's conclusion that the trial judge relied on an unavailable ground in finding the defendant eligible for the death penalty.

The defendant's eligibility for the death penalty was based on section 9—1(b)(6) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6)), which authorizes the imposition of that sentence when murder is committed in the course of certain specified felonies. The predicate offenses include burglary but not residential burglary (see Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6)(c)). The defendant, who had been tried by a jury, waived the jury for purposes of sentencing. In finding the defendant eligible for the death penalty under section 9—1(b)(6), the trial judge ruled that burglary was an included offense of residential burglary, and that the defendant's conviction at trial for residential burglary necessarily constituted a conviction for burglary.

The State makes two contentions in this appeal in support of the trial court's finding that the defendant was eligible for the death penalty. First, the State argues that the omission of residential burglary from the list of predicate felonies in section 9—1(b)(6)(c) was an oversight by the legislature, and the State invites us to construe the provision as containing that offense. Second, the State argues that burglary is an included offense of residential burglary, and the State concludes that the defendant's conviction for residential burglary meant that he was proved guilty of burglary as well.

In *People v. Walker* (1982), 91 Ill. 2d 502, the defendant argued that an attempt to commit one of the felonies specified in section 9—1(b)(6)(c) could not serve as the

predicate for a death sentence imposed under that provision. At that time, section 9—1(b)(6)(c) did not expressly apply to attempts to commit the felonies specified in that provision; the statute has since been amended to include attempts to commit those felonies. (See Pub. Act 82—1025, eff. December 15, 1982 (amending Ill. Rev. Stat. 1981, ch. 38, par. 9—1(b)(6)(c)).) *Walker* rejected the defendant's argument, noting that the statute requires only that the murder have been committed "in the course of" one of the enumerated felonies. The court stated:

"[S]ection 9—1(b)(6) of our death penalty statute requires only that the State prove beyond a reasonable doubt, *inter alia*, that the murder was committed in the course of one of the felonies enumerated in section 9—1(b)(6)(c). The phrase 'in the course of' does not require that the defendant complete one of the enumerated felonies or that he be charged and convicted of any offense other than murder to be eligible for the death penalty." (*Walker*, 91 Ill. 2d at 512.)

Thus, *Walker* provides that a defendant may be eligible for the death penalty under section 9—1(b)(6) even though he was not charged with or convicted of the predicate felony. Accord *People v. Shum* (1987), 117 Ill. 2d 317, 365 (insufficiency of evidence to sustain defendant's rape conviction would not affect death-penalty eligibility under section 9—1(b)(6)(c), as evidence clearly showed that murder occurred in course of attempt to commit rape); see also *People v. Ramirez* (1983), 98 Ill. 2d 439, 457-59 (defendant's conviction for attempted, rather than completed, predicate felony no bar to death-penalty eligibility under section 9—1(b)(6)(c); applicable version of statute same as in *Walker*).

In declining to consider the State's argument that burglary is an included offense of residential burglary, the majority expresses its concern that, even if it is as-

sumed that the one offense is included in the other, a conviction could have been imposed only on the more serious offense, residential burglary. As we have seen, residential burglary is not a felony enumerated in section 9—1(b)(6)(c) but burglary is, and the majority believes that the absence of a conviction for burglary would preclude a finding of eligibility under that provision. (129 Ill. 2d at 255.) That concern is misplaced. As *Walker* teaches, it is not necessary for a finding of death-penalty eligibility under section 9—1(b)(6)(c) that the defendant have been charged with or convicted of burglary, the predicate felony here.

Moreover, there is no need to decide in this case whether burglary is an included offense of residential burglary. In the proceedings below, the State apparently sought to establish that relationship between burglary and residential burglary because the jury had already convicted the defendant of the latter offense. But as we have seen in *Walker*, the finding that the murder was committed in the course of one of the felonies specified in section 9—1(b)(6)(c) may be made in the first stage of the sentencing hearing. In the present case, the defendant waived a jury for purposes of the sentencing hearing, and the trial judge found that the murder had been committed in the course of a burglary. Under *Walker*, that finding would be sufficient to establish the defendant's eligibility for the death penalty pursuant to section 9—1(b)(6). Given that result, we have no occasion to consider the State's additional argument that the omission of residential burglary from the list of felonies specified in section 9—1(b)(6)(c) is a matter that may properly be remedied by the judiciary.

### III

For the reasons indicated, I respectfully dissent from the majority's conclusions that the defendant was denied

the effective assistance of counsel at trial and that the defendant's eligibility for the death penalty rested on an improper ground. I would therefore consider the remaining arguments raised by the defendant in the present appeal.