THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID McCARTHY, Defendant-Appellant.

First District (5th Division) No. 1—85—2485

Opinion filed August 17, 1990.

Randolph N. Stone, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Kenneth McCurry, and Mark A. Shlifka, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

This case comes to this court on remand from the Illinois Supreme Court.[1] In the initial appeal in this case we reversed McCarthy's conviction and 34-year sentence for murder and remanded

---

[1]This case was remanded from the supreme court on January 11, 1990.

for a new trial based on our finding that the trial court erred by failing to instruct the jury on the lesser included offense of voluntary manslaughter. (*People v. McCarthy* (1989), 181 Ill. App. 3d 208, 213-14, 536 N.E.2d 917.) Although McCarthy's initial appeal also questioned the adequacy of his trial counsel, this court did not reach that issue, having found that the trial court's refusal to give the tendered instruction mandated a new trial.

The State sought leave to appeal the decision of this court to the Illinois Supreme Court and leave was granted. The supreme court reversed this court's opinion, concluding that a voluntary manslaughter instruction was not warranted by the facts of this case. (*People v. McCarthy* (1989), 132 Ill. 2d 331, 547 N.E.2d 459.) However, rather than affirm McCarthy's conviction, the supreme court remanded the case to this court so that we could consider whether McCarthy received effective assistance of counsel at trial.

The facts of the case have been set forth in detail in our initial opinion and in the opinion delivered by the supreme court. However, we shall recount them here briefly.

Defendant, David McCarthy, was charged with, and eventually convicted for, the shooting death of Adrianne Neal, a girl with whom he had once enjoyed a romantic relationship. McCarthy and Neal began dating in high school in 1974 and, although they never married, lived together from 1978 or 1979 until 1983, except for some brief separations. They also had two children, one in 1978 and another in 1981. In April 1983, however, their relationship ended, at which time Neal and her children moved out of defendant's apartment and, eventually, into their own apartment.

About 11:45 p.m., on June 7, 1983, defendant broke into Neal's apartment. Neal's sister, Anita, and Anita's boyfriend, Woodrow McGuire, were in the kitchen, while Neal and Neal's new boyfriend, Winfred Johnson, were in Neal's bedroom. When defendant entered the kitchen, he knocked Anita to the floor and then held a gun to her head. Woodrow asked defendant not to shoot, and defendant released Anita. He then went to Neal's bedroom, where he fired several shots, injuring Johnson and killing Neal. Neal's autopsy revealed that she died from a bullet wound to the head and that she suffered a total of five gunshot wounds, several at close range.

After initially attempting to elude police by leaving the State, defendant later surrendered himself to the authorities. He did not deny shooting Adrianne Neal, perhaps because it would have been unreasonable if he had in light of the number of witnesses to the incident. Rather, it was defendant's contention that he did not commit

the offense of murder because he did not have the requisite intent. At trial, in his opening statement, McCarthy's counsel conceded that defendant shot his "common law wife" but asserted that the shooting was manslaughter resulting from the provocation of seeing her in bed with another man. Defendant testified at trial consistently with this theory of defense, stating that he had become despondent since his break-up with Neal and that he had gone to her apartment in the hopes of reconciling with her. He claimed that he brought the gun, intending to shoot himself if she refused to reconcile with him, but upon seeing his "wife" in bed with another man, killed her in the heat of passion.

As stated earlier, the trial court refused to instruct the jury on the offense of voluntary manslaughter, ruling that the category of serious provocation recognized in instances of spousal adultery could not be extended to unmarried persons who shared a marital-type relationship. This court reversed McCarthy's conviction, finding that the trial court's refusal to instruct the jury on voluntary manslaughter was reversible error. But on appeal to the supreme court the trial court's ruling concerning the giving of the instruction was affirmed.

Now, on remand, we must decide whether defendant was denied the effective assistance of counsel. It is defendant's contention that his right to competent counsel was denied because his attorney admitted that he shot and killed Neal and urged the jury to find him guilty of voluntary manslaughter when this defense was not available to him. Defendant argues that his counsel, by admitting to the killing, in effect pleaded him guilty to the charge of murder. We disagree, and for reasons we shall state below, we affirm defendant's conviction and sentence.

■ Generally, any claim of ineffective assistance of counsel must be considered in light of the standard set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, and adopted by our supreme court in *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246. According to *Strickland*, a review of the record must be made to determine (1) whether defense counsel made any serious errors or whether his performance was so deficient that he did not function as the "counsel" guaranteed by the sixth amendment of the United States Constitution, and (2) whether defendant was actually prejudiced by his representation. (*People v. Johnson* (1989), 128 Ill. 2d 253, 265-66, 538 N.E.2d 1118.) However, in rare instances, where counsel entirely fails to subject the prosecution's case to a meaningful adversarial testing, the bifurcated test of *Strickland* may be abandoned and ineffective assistance of counsel may be presumed.

*United States v. Cronic* (1984), 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039.

In the present case defendant contends that his claim of ineffective assistance of counsel need not meet the two-part *Strickland* test but that a denial of competent counsel should be presumed. As support for his position he relies upon *People v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513, and *People v. Chandler* (1989), 129 Ill. 2d 233, 543 N.E.2d 1290.

In *Hattery* our supreme court found that the facts of that case constituted a *per se* denial of the right to counsel guaranteed by the sixth amendment. In that case the defendant's trial attorneys stated in their opening statement to the jury:

"We are not asking you to find Charles Hattery not guilty. At the end of your deliberations, you will find him guilty of murder. We are asking you to consider the evidence that you hear today and in the next few days to explain why he did the horrible thing that he did. Once you have found him guilty, we will proceed and you will find him eligible for the death penalty. The question, and the only question facing you, will be whether to impose the death penalty on Charles Hattery for trying to save the life of his family." (Emphasis omitted.) *Hattery*, 109 Ill. 2d at 458-59.

It is clear that the admission made by defense counsel in *Hattery* was wholly inconsistent with a plea of not guilty. However, the admissions made by defense counsel in the present case do not parallel those in *Hattery*. In this case defendant's trial counsel stated:

"David is presumed innocent. He is presumed innocent now, throughout the entire trial and even when you go back into that room to deliberate.

His presumption is more precious than gold and I am going to caution you to listen to the evidence. We are telling you that David shot and killed Adrianne but we are saying that it was not murder, that there is [*sic*] sufficient facts that you will hear testimony about to show heat of passion, to show that he killed her only when he saw her in bed with another man."

Even in closing argument, after learning that the trial judge had ruled against the tendered instruction on manslaughter, defense counsel continued to represent his client as innocent of murder, focusing his argument on defendant's lack of intent to commit the offense.

■ Consequently, we do not find that defendant's trial counsel failed to subject the prosecutor's case to a meaningful adversarial testing and so defendant's claim of ineffective assistance of counsel

may not be presumed. Rather, the two prongs of the *Strickland* test must be proven for defendant to obtain a reversal of his conviction based on his claim of ineffective counsel.

We note, too, that while defendant attempts to analogize his case to *Chandler*, *Chandler* does not support his claim that a denial of counsel should be presumed. In *Chandler* the court made clear that its decision in *Hattery* "did not hold that it is *per se* ineffectiveness of counsel whenever an attorney concedes his client's guilt to offenses and the record fails to show the client's consent, if there is over-whelming evidence of that guilt." (*Chandler*, 129 Ill. 2d at 246. See also *People v. Johnson* (1989), 128 Ill. 2d 253, 269.) Additionally, the *Chandler* court acknowledged that a defendant faced a "high burden" before the *Strickland* test could be forsaken. The court then went on to decide that the facts of that case did not warrant abandoning the *Strickland* test, but that when applying the *Strickland* test defendant showed that he was prejudiced by the serious errors of his trial counsel.

We find, however, that *Chandler*, too, is distinguishable from the present case. In *Chandler* the defendant was charged with four counts of murder, including felony murder. Yet defense counsel made no attempt to refute the evidence that defendant was present at the scene of the murder, which occurred during the course of a residential burglary in which defendant apparently participated. Counsel did not cross-examine several witnesses or present any witnesses for the defense. Moreover, the defendant was not called, despite the fact that counsel told the jury in opening statement that he would testify. In short, in light of the well-settled law on accountability, defendant made no attempt to present any legal theory of innocence for the felony murder charge.

Significantly, in the case at bar, defense did not ignore well-settled principles of law, but rather, attempted to adopt and extend them to the facts of the case. Defense counsel, obviously aware that voluntary manslaughter is a partial exoneration for the charge of murder, at-tempted to show that this client was guilty of that offense, having acted in the heat of passion provoked by the infidelity of his "common law wife." While this theory of defense had not been established in instances where the victim and the accused were not legally married, it was unclear whether a nonmarital relationship could be recognized as a basis for the serious provocation category heretofore recognized in instances of spousal adultery. In fact, this question is still not an-swered since the supreme court did not reach this issue, having found that the instruction on voluntary manslaughter was not available in

this case because the relationship between McCarthy and Neal had terminated prior to the killing. (*People v. McCarthy*, 132 Ill. 2d at 342.) Additionally, defendant apparently agreed with this theory of defense since he testified at trial consistently with this theory.

We do not believe that the subsequent ruling that the facts of this case did not fall within the presently accepted legal boundaries defining the offense of manslaughter requires a finding that defense counsel's representation was deficient. Surely a counsel's legitimate and reasonable effort to obtain exoneration for his client, even partial exoneration, should not be evaluated by its ultimate success.

There is an old saying that a legal genius will tell his client that he will look at the law to determine the facts of the case, while a good lawyer will say that he will examine the facts of the case and determine how the law applies. The sixth amendment guarantees a defendant a good lawyer who investigates the facts of the case and the prevailing status of the law and then presents a defense according to the results of that investigation and inquiry. The sixth amendment does not guarantee a legal genius, nor a seer of the future, who can foretell the actions of the court.

 █ Finally, we note once again that trial counsel, when faced with the trial court's decision to omit the voluntary manslaughter instruction, raised the key issue in the case, *i.e.*, intent, arguing to the jury that McCarthy's mental condition at the time of the killing warranted a finding of not guilty to the offense of murder. Consequently, we find no evidence that defense counsel was incompetent or that his representation was deficient. Nor do we believe that defendant was prejudiced by the representation he received. Perfection is not the standard by which counsel must be measured (*People v. Hillenbrand* (1988), 121 Ill. 2d 537, 521 N.E.2d 900) and competency is not synonymous with the ability to secure a client's acquittal.

For all the reasons stated above, we affirm McCarthy's conviction and sentence.

Affirmed.

COCCIA, P.J., and GORDON, J.,* concur.

---

*Justice R. Eugene Pincham participated in this case prior to his resignation. Since that time, Justice Joseph Gordon was designated the third member of the panel and has read the record and briefs and has listened to the oral argument tape.