THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERVIN LEWIS, Defendant-Appellant.

First District (5th Division)   No. 1—86—1955

Opinion filed October 23, 1992.

Michael J. Pelletier and Karen Daniel, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and David Stabrawa, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Following a jury trial, defendant Ervin Lewis was found guilty of two counts of murder and sentenced to natural life imprisonment. Defendant appeals, contending that he received ineffective assistance of counsel and that he was improperly sentenced on four counts of murder where there were only two deaths.

Clara Dodds, defendant's sister, testified that in 1985 she lived in a third-floor apartment at 6945 North Ashland Avenue, Chicago, Illinois. Venus Mandley lived in a second-floor apartment in the same building. Clara testified that in the evening of April 18, 1985, defendant and Lovie Johnson arrived at the building and began arguing with Venus. Venus told defendant to get away from her door and then slammed the door and locked it. Approximately 10 minutes later, a police officer arrived. Venus told the officer that it was she who called the police and the officer went with Venus to her apartment.

Clara testified that defendant and Lovie entered Clara's apartment an hour-and-a half later and defendant immediately went into the washroom and asked Clara for a pair of pants. Clara said that defendant had a butcher knife. Clara went into the bathroom and saw defendant's pants in a bucket she used to wash her clothes. Defendant told her that if she said anything he "would kill all the motherf-----s."

Clara testified that on April 19, 1985, she entered Venus' apartment with defendant and Lovie, and saw Venus' body. Defendant told Clara to take Venus' turntable and tape recorder and Clara complied.

Clara further testified that on April 20, 1985, she was at home with her husband, Buddha Cookbey, defendant and Lovie when her brother-in-law, Nimrod, came by the apartment. Clara testified that defendant asked Nimrod to take a walk with him, but when the men reached the kitchen door, defendant began stabbing Nimrod, kicked Nimrod down the stairs and carried his body into Venus' apartment. Defendant then mopped up the blood from the kitchen floor.

Buddha Cookbey next testified that when he woke up on April 20, 1985, he saw defendant, Lovie and Clara mopping something up from the kitchen floor. Buddha testified that later that day, he went to his grandmother-in-law's house with defendant. Once there, defendant started hitting Buddha. Buddha was bleeding heavily and ran to the doctor. The police were called and defendant was arrested.

Lovie Johnson testified next that at the time of defendant's trial, she was an inmate at the Dwight Correctional Facility, serving two concurrent four-year sentences for burglary. She also admitted that on four previous occasions, she had been convicted of misdemeanor theft. Lovie testified that on April 12, 1985, she went with defendant to Nimrod's apartment. Defendant and Nimrod left the apartment for a few minutes and when Nimrod returned, he told Lovie to go downstairs and get defendant because defendant was involved in a fight. Lovie found defendant lying on the floor and the building manager told them to get out of the building. The manager then hit Lovie with a stick. Lovie stated that the next thing she remembered was lying in Nimrod's bed, and Nimrod was putting a towel over her eyes. Lovie spent two days in the hospital. Lovie later discussed the incident with defendant and defendant said, "I'm going to f--- [Nimrod] up about that."

Lovie stated that on April 18, 1985, she observed defendant arguing with Venus. Defendant went upstairs when the police arrived but returned to Venus' apartment when the police left. Defendant and Lovie entered Venus' apartment and defendant told Lovie to look out the window for the police. Defendant stabbed Venus repeatedly and then ordered Lovie to help him drag Venus' body into the bedroom, put Venus in bed, and throw some clothes over her. Lovie complied. Defendant and Lovie then went to Clara's apartment and defendant told Lovie not to tell anybody what had just happened. Lovie, nonetheless, told Clara that defendant had killed Venus. Soon thereafter, defendant told Clara and Lovie that "he killed the bitch."

Lovie testified that on April 19, 1985, she went with defendant and Clara to Venus' apartment. Defendant took Venus' stereo and passed it to Lovie, and Lovie passed it to Clara, who put it in her closet.

Lovie testified that on April 20, 1985, she was in Clara's apartment with defendant, when defendant asked Nimrod to accompany him to the kitchen. Lovie saw defendant stab Nimrod repeatedly, kick Nimrod down the stairs and drag him into Venus' bedroom. Lovie then complied with defendant's order that Lovie throw some clothes over Nimrod's body. Later that day, Lovie observed defendant hit Buddha in the head with an ashtray.

Defendant contends that he was denied his constitutional right to effective assistance of counsel where trial counsel: (1) failed to ask the court to instruct the jury on accomplice witness testimony; (2) based his defense on an exculpatory pretrial statement by defendant that was not introduced at trial; (3) failed to move for a severance; and (4) pursued a defense theory which left the jury with no choice but to convict defendant. In order to succeed in a claim of ineffective assistance of counsel, defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.) Our review of the record here indeed reveals that defense counsel's performance was deficient and that certainly the cumulative effect of counsel's deficiencies denied defendant a fair trial.

■ Defendant first alleges that trial counsel was ineffective because he failed to ask the trial court to submit to the jury an instruction on accomplice witness testimony. The accomplice witness instruction (Illinois Pattern Jury Instructions, Criminal, No. 3.17 (2d ed. 1981)) states:

> "When a witness says he was involved in the commission of a crime with the defendant, the testimony of that witness is subject to suspicion and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case."

The accomplice witness instruction is to apprise the jury that the testimony of an accomplice is fraught with serious weakness such as the promise of leniency or immunity and malice toward the accused. (*People v. Wilson* (1977), 66 Ill. 2d 346, 362 N.E.2d 291.) The test for determining whether a witness is an accomplice for the purposes of the accomplice witness instruction is whether the witness could have been indicted for the offense in question either as a principal or under a

theory of accountability. (*People v. Cobb* (1983), 97 Ill. 2d 465, 455 N.E.2d 31.) If this test is satisfied, the defendant is entitled to an accomplice instruction even if the witness denies involvement in the crime. *People v. Howard* (1991), 209 Ill. App. 3d 159, 568 N.E.2d 56.

■ Applying these principles to the evidence presented here, we find sufficient evidence to establish that Lovie Johnson was an accomplice to the murder of Venus Mandley. Lovie Johnson admitted that she observed the murder of Venus. Lovie accompanied defendant to Venus' apartment, remained there after being apprised of defendant's criminal intent, watched for police, observed defendant repeatedly stab Venus and did not attempt to prevent defendant from stabbing Venus. Lovie also helped hide Venus' body and take some of Venus' property. Although Lovie testified that defendant told her not to tell anyone about the murder, Lovie did not testify that this admonition was accompanied by any threat of violence against her and Lovie never testified that she feared defendant. Lovie did not go to the police until after defendant's arrest when she herself was being sought by authorities. These circumstances clearly provide probable cause to indict Lovie for Venus' murder. See *People v. Montes* (1989), 192 Ill. App. 3d 874, 549 N.E.2d 700 (acting as a lookout is an act aiding and abetting the commission of an offense); *People v. Carreon* (1987), 162 Ill. App. 3d 990, 516 N.E.2d 372) (presence at scene, sharing in proceeds and the failure to call the police are significant factors in determining that an accomplice instruction was necessary); *People v. Grabbe* (1986), 148 Ill. App. 3d 678, 499 N.E.2d 499 (after the fact aid is indicative of alleged accomplice's intent prior to the offense).

Trial counsel's failure to tender an accomplice witness instruction was certainly not due to trial strategy and would not have been inconsistent with any theory of defense since defense counsel contended throughout trial that Lovie participated in the murders and therefore was not a credible witness. We nonetheless find that while defense counsel should have tendered the accomplice witness instruction, this error, alone, would not require reversal since the jury was instructed that in determining the credibility of witnesses, they should consider any interest, bias or prejudice the witness might have.

Defendant's next argument is that his trial counsel was ineffective in basing his defense on evidence which he could not and did not produce to the jury. In his opening statement, defense counsel told the jury that defendant gave a pretrial statement in which defendant admitted stabbing Nimrod Cookbey but claimed that Lovie Johnson also stabbed Nimrod. Trial counsel then told the jury that it would have to determine whether it was defendant or Lovie who produced the fatal

blow that killed Nimrod. Trial counsel also noted that in that statement, defendant denied stabbing Venus Mandley. The State never offered defendant's pretrial statement into evidence and when defense counsel attempted to introduce the statement, the trial court ruled it inadmissible. Nevertheless, in closing argument, trial counsel again referred to defendant's pretrial statement and the court sustained the prosecution's objection.

■ It is well settled that a defendant's post-arrest, custodial statement offered in his own favor is not an admission and is subject to objection on hearsay grounds. (*People v. Hudson* (1990), 198 Ill. App. 3d 915, 556 N.E.2d 640; *People v. Berry* (1988), 172 Ill. App. 3d 256, 526 N.E.2d 502.) Not disputing that defense counsel was incompetent in promising the jury that he would introduce defendant's pretrial statement into evidence, the State argues that defendant was not prejudiced by trial counsel's deficient performance. We are not persuaded by the State's argument since the promise to produce such significant exonerating evidence and the failure to fulfill such promise is highly prejudicial. *People v. Ortiz* (1992), 224 Ill. App. 3d 1065, 586 N.E.2d 1384 (where defense counsel suggested to the jury during opening statements that there was another suspect in the case other than defendant but defense counsel never introduced such evidence, defense counsel's conduct was deficient and prejudiced the defendant); *Anderson v. Butler* (1st Cir. 1988), 858 F.2d 16 (where defense counsel stated in his opening argument that he would call a psychiatrist and a psychologist who would testify in support of defendant's claim of mental impairment but counsel failed to present such evidence, the court found that counsel's failure to produce the promised testimony was prejudicial and constituted ineffective assistance of counsel).

■ Defendant's next allegation of ineffective assistance of counsel involves trial counsel's failure to move to sever the two charges of murder. Joinder of prosecutions is permitted when the charges are based on the same act or on two or more acts which are part of the same basic transaction. (Ill. Rev. Stat. 1987, ch. 38, par. 114—7.) Factors to consider in determining whether offenses are part of the same transaction include: their proximity in time and location, the identity of evidence to be presented, similarities in the acts, and whether there was a common method of operation by the perpetrator. *People v. Stevens* (1989), 188 Ill. App. 3d 865, 544 N.E.2d 1208.

Our review of the record here leaves no doubt that defense counsel should have filed a motion to sever the two murder charges. According to the evidence, there were different motives for the murders of Venus and Nimrod, and the murders occurred at different locations

and on different days. That the victims' bodies were discovered in the same location, and there were common witnesses to the two murders, does not lead to the conclusion that the murders were part of the same comprehensive transaction. See *People v. Jeffries* (1976), 35 Ill. App. 3d 991, 343 N.E.2d 63; *People v. Bricker* (1974), 23 Ill. App. 3d 394, 319 N.E.2d 255.

We can conceive of no legitimate trial strategy in defense of counsel's failure to move for a severance. Instead, we are struck by the distinct disadvantage defendant suffered from the joint trial. Defendant's trial counsel raised markedly different defenses to the two murder charges, denying defendant had any involvement in Venus' murder while admitting that defendant stabbed Nimrod, but claiming that Lovie struck the fatal blow, and that the murder was justified. Certainly, counsel's task of convincing the jury of each of these theories was made more difficult by having to simultaneously argue that a completely distinct theory applied to the other murder. Also, we cannot underestimate the impact the cumulative evidence regarding the two murders must have had on the jury. (*People v. Melgoza* (1992), 231 Ill. App. 3d 510, 595 N.E.2d 1261, is distinguishable since that was a bench trial.) Accordingly, there is no doubt that defendant was prejudiced by defense counsel's failure to move to sever the charges.

■■ Defendant's last allegation of ineffectiveness on the part of his trial counsel concerns defense counsel's pursuing a theory of defense which left the jury no choice but to convict defendant of murdering Nimrod Cookbey. In his opening statement, counsel told the jurors that defendant's pretrial statement indicated that Lovie Johnson had also stabbed Cookbey and that the jurors would have to decide whether it was Johnson or Lewis who inflicted the fatal blow. As we previously noted, defendant's pretrial statement was inadmissible at trial. Furthermore, even if defendant's statement had been admitted at trial, this theory of defense would have failed since one need not inflict the fatal wound in order to be guilty of murder. See *People v. Watts* (1988), 170 Ill. App. 3d 815, 525 N.E.2d 233.

■■ In closing argument, defense counsel switched to an equally unsuccessful theory of defense when he told the jury: "You got an easy job on Nimrod. If it was justified, you turn him loose, if it wasn't, you convict him." The problem with this theory of defense was that the jury was not given an instruction that would have permitted them to find defendant guilty of a lesser offense based on justification since they were instructed on neither self-defense nor on voluntary manslaughter. (See *United States ex rel. Barnard v. Lane*

(7th Cir. 1987), 819 F.2d 798 (in light of defendant's testimony, and the fact that the jury was not instructed on justification or voluntary manslaughter, the jury had no choice but to convict defendant of murder).) Defense counsel never asked for an instruction on self-defense or voluntary manslaughter and certainly the evidence provided no basis for a finding of either self-defense or voluntary manslaughter. Accordingly, defendant was prejudiced by defense counsel's deficient performance, which left the jury with no choice but to find defendant guilty of murder. See *People v. Chandler* (1989), 129 Ill. 2d 233, 543 N.E.2d 1290; *People v. Torres* (1991), 209 Ill. App. 3d 314, 568 N.E.2d 157.

Lastly, we note that since only two deaths occurred, defendant may be convicted of only two counts of murder. *People v. Mack* (1984), 105 Ill. 2d 103, 473 N.E.2d 880.

Accordingly, for the reasons set forth above, defendant's murder convictions are reversed and this case is remanded for a new trial.

Reversed and remanded.

LORENZ and GORDON, JJ., concur.