NO. 4-97-0378

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee, ) Circuit Court of

v. ) McLean County

HARRY NICHOLSON, ) No. 96CF1171

Defendant-Appellant. ) 

) Honorable

) G. Michael Prall,

) Judge Presiding.

JUSTICE GREEN delivered the opinion of the court:

On October 24, 1996, defendant Harry Nicholson was charged in the circuit court of McLean County in a seven-count complaint.  After a trial by jury, the court entered judgment on verdicts on March 26, 1997, finding defendant guilty of (1) count I, armed robber­y, (2) count II, armed robbery; (3) count III, armed robbery; (4) count IV, attempt (armed robbery); and (5) count VI, aggravated battery.  Verdicts of not guilty were returned in regard to count V, theft of a firearm, and count VII, aggravated battery involving Faye Sonntag.

The court imposed concurrent sentences of imprison­ment of 30 years on the three armed robbery convic­tions, 15 years on the attempt conviction and 5 years for the aggravated battery convic­tion.  The court found that in regard to the count I conviction for armed robbery, defen­dant had inflicted great bodily harm on a victim and, according­ly, he would be required under section 3-6-3(a)(2)(ii) of the Unified Code of Corrections (Code) (730 ILCS 5/3-6-3(a)(2)(ii) (West 1996)) to serve 85% of his sentence because of the "truth-in-sentencing" aspect of that legislation.

Defendant has appealed, contending (1) his trial attorney was ineffective because he failed to (a) file a motion to sever the charges, (b) object to the prosecutor's request that defendant comment on the veracity of the witnesses, (c) proffer jury instructions on the affirmative defense of compul­sion, and (d) object to the admission of improper hearsay from one of the victims regarding his injuries; (2) the "truth-in-sentencing" provision violates the "single subject rule" of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, §8 (d)); and (3) the truth-in-sen­tenc­ing provi­sion violates the equal protec­tion clause of that consti­tu­tion. 

We summarily reject the contention that the truth-in-

sentencing provisions deprive convicts of equal protection.  The provisions have the rational basis of treating those who have committed more serious offenses more severely.  The instant legis­lation did away with credits from constitutionally valid sentenc­es that were provided for by the legislature to give incentives to certain types of convicts to behave during their incarcera­tion.  See 
People v. Burton
, 100 Ill. App. 3d 1021, 427 N.E.2d 625 (1981). 

We do not agree defense counsel was ineffective in failing to seek a severance.  Defendant should have objected to the pro­secutor's request that defendant comment on the veracity of certain wit­nesses, but we do not find any substan­tial preju­

dice to defendant resulted from this.  The failure of counsel to object was not incompetence.  We also hold that testimony of Jon Trivedi that he had suffered a skull fracture during the course of the armed robbery charged in count I was not improperly admitted and the failure to object to it was not incompetence of counsel.  Finally, we hold that the truth-in-sentencing provisi­on included ­was not invalid.  Accordingly, we affirm.

Count I alleged that on August 6, 1996, defen­dant took money and other property from Jon and Urnaila­ben Trivedi at the L & L Motel by the use or threat of force while armed.  Count II alleged that on September 1, 1996, defen­dant took money, a pizza and a pizza warmer from Gail Kimbrough by the use or threat of force while armed.  Count III alleged that on Septem­ber 2, 1996, defendant took a check­book and credit cards from Faye Sonntag by the use or threat of force while armed.  Count IV alleged that on Septem­ber 3, 1996, defendant intended to commit the offense of armed robbery and took a substantial step toward that offense by entering a grocery store while armed.  Count VI alleged that on Septem­ber 1, 1996, defen­dant caused a bump on the head of Gail Kimbrou­gh by hitting her with a glass bottle.

At trial, Urnailaben Trivedi testified that she and her husband were the owners of the L & L motel in Bloomington and were robbed in the early morning hours of August 6, 1996, by three men, including a heavyset man, who was about 6 feet tall and carrying a knife, and a thin man carrying a bat.  She did not see the third person.

Jon Trivedi testified that he was in the back room of the motel when he heard his wife scream.  He opened the door to the office, was hit on the head with a bat, blacked out briefly, and fell to the floor.  He did not see what the assailants looked like.  He testified that he suffered a skull fracture from the incident.

Gail Kimbrough testified that she was a pizza delivery person for Domino's, at approximately 2 a.m. on September 1, 1996, when she was attempting to deliver pizza to a Bloomington address.  She said she saw a tall, heavy­set black man under a tree and approached him to ask about the address.  A second black man, who was approximately 6 feet 5 inches and very thin, ap­

proached her from behind, and a third man hit her in the head with a vodka bottle.  The men kicked her and demand­ed money.  She said she did not see the third man, because he remained behind her.  She saw them run to a light-colored car.

Faye Sonntag testified she was stopped at an automatic teller machine (ATM) on September 2, 1996, at approximately 9:15 p.m. to make a deposit.  As she was sitting in her van, two men approached her with a gun.  The men at­tempted to force her to withdraw money, but the machine would not dispense any.  The men then grabbed her checkbook and credit cards and hit her across the face.

Stephanie Smith testified she was working at a grocery store in the early morning hours of September 3, 1996, when a man came in to buy cigarettes.  Shortly thereafter, she saw a second man dressed in black, wearing a black ski mask, bent down near the office.  When the man told Smith to "hold it," she "took off running."  The police later brought these two men back to the store for identification by Smith.

Codefendant Maurice Betts testified concern­ing the incidents and his involvement in them.  He said he, James Heard, Roy Alexander, and defendant were involved in robbing Kimbrou­gh and Sonntag.  Betts testified that he participated in the robbery of Sonntag because Alexander held a shotgun to his head and he was afraid Alexander would kill him.

 Defendant does not dispute that he was involved, at least peripherally, in the various incidents.  He testified as follows:  (1) he, Alexander, Parrish Mayberry, and Dallas Long were at Alexander's house on August 6, 1996, when Alexander decided to throw a party at a motel; (2) they all went to the L & L motel, and Alexander stated they were going to rob the owners; (3) Alexander gave knives to Mayberry and Long, and he took a baseball bat; and (4) defendant decided to leave, because Alexan­

der was on some "stupid stuff," and defendant did not want to be involved.  Defendant said he did not participate in any robbery at the L & L Motel.

Defendant further described the incident on September 1, 1996, when Gail Kimbrough was robbed of money and a pizza.  Defendant testified Alexander hit Kimbrough with a vodka bottle and Betts grabbed the pizza.  Defendant admitted he was present but said he did not know Alexander was planning to attack Kim­

brough.

Defendant testified that on September 2, 1996, he, Betts, and Alexander were driving around, and they stopped for a pizza.  He saw Alexander pointing a gun at Betts and heard him threaten to shoot Betts.  Alexander then said to defendant, "man, I ain't playing *** come on, let's go."  Defendant then went with Alexander to rob Sonntag at the ATM.  Defendant said he did not at any time touch Sonntag in any way.  Alexander was the one who grabbed her, hit her with the gun, and took her credit cards and checkbook.  Defendant said he took Alexander's statement "I ain't playing" as a threat.

With regard to the grocery store incident, defendant said Alexander wanted to purchase some cigarettes.  He said Alexander then put on the ski mask.  Defendant said he stayed in the car until Alexander later came running out of the store followed by some store employees.  Alexander then drove away, and they were stopped by the police.  Defendant said he did not know what Alexander was planning to do that night.

On cross-examination, the prosecutor asked defen­dant if two police officers who testified against defendant were lying when they said defendant had not reported any threats made to him by Alexander.  Defendant agreed they were both lying.  Defense counsel did not object to the State's question­ing.

James Lesczyznski, a detective with the Normal police department, testified as follows:  (1) he was assigned to inves­

tigate an armed robbery at an ATM machine; (2) in the course of his investigation, he had contact with Betts around September 18, 1996; (3) Betts told him that Roy Alexander had threatened to kill him; (4) Lesczyznski later talked with defendant and accused him of being present at the ATM robbery; (5) defendant put his head down and nodded but did not say anything; (6) defendant told the detective he had information about the L & L motel and the robbery of the pizza delivery person; and (7) defendant said Alexander was responsible for all the crimes.

Lesczyznski further testified that when he first talked to defendant, defendant told him Alexander had been making threats to him.  He said defendant later told him that Alexan­der was continuing to threaten him.  He indi­cated it was apparent to him that defendant was afraid of Alexan­der.

Richard Barkes, a detective with the Bloomington police department, testified that on September 24, 1996, Lesczyznski contacted him regarding a number of unsolved crimes.  Barkes took statements from defendant on September 24, 1996, and October 8, 1996.  Barkes testified that in the September 24 interview, defendant admitted his involvement in the robbery of the L & L Motel and of Sonntag.  He said defendant told him the robbery was Alexander's idea, it was Alexander's gun, and it was Alexander who pushed Sonntag and hit her in the face.  He said the L & L robbery was Alexander's idea, and Alexander supplied the weapons: knives for Dallas Long and Parrish Mayberry and a bat for Alexan­

der.  Defendant also stated he had not carried a weapon.

According to Barkes, on October 8, 1996, he again interrogated defendant about the L & L robbery.  Barkes testified defendant then stated he carried the bat and Alexander stayed in the automobile a short distance from the motel.  Barkes further stated defendant told him, in regard to the attempt (armed robbery) of the grocery store, defendant and Alexander went to the back of the building with a sawed-off shotgun and defendant was wearing gloves and a ski mask when he entered.

In regard to the armed robbery of Gail Kimbrough, Barkes testified defendant told him that defendant, Alexander, Betts and a person named James were involved, and defendant admit­ted he hit Kimbrough in the head with the bottle.  Barkes stated defendant said earlier statements he had made to law enforcement officers were different because he was afraid of Alexander.

Defendant argues that his trial counsel was ineffective for various reasons.  Allegations of ineffective assistance of counsel are evaluated according to a two-part test announced in 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).  Under the 
Strickland
 test, the defendant must prove (1) counsel's assistance was not reasonable by showing counsel's representation fell below an objective standard of reasonableness under prevailing professional norms such that the attorney did not function as counsel guaranteed by the sixth amendment of the Constitution of the United States; and (2) counsel's deficient performance prejudiced the defendant.  
Strickland
, 466 U.S. at 687-88, 80 L. Ed. 2d at 693-94, 104 S. Ct. at 2064-65.  This requires a showing that coun­sel's errors were so serious that defendant was deprived of a fair trial (
Strickland
, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064) such that there is a reasonable probability of a differ­ent result with effective assistance (
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068).

Defendant maintains first that his counsel should have filed a motion to sever the seven counts pending against him.  He notes the seven counts were based on acts occurring on five different dates with six different victims and involved four different kinds of weapons.  He notes the counts charged were not based upon a single act and were not part of a compre­hensive transaction.

The question of whether to join or sever charges against a defendant is properly addressed to the sound discretion of the trial court.  
People v. Stevens
, 188 Ill. App. 3d 865, 884, 544 N.E.2d 1208, 1221 (1989).  Joinder of two or more offenses is proper if the offenses charged are based on the same act or on two or more acts that are part of the same compre­hen­

sive transaction or scheme.  725 ILCS 5/111-4 (West 1996); 
People v. Lewis
, 269 Ill. App. 3d 523, 529, 646 N.E.2d 305, 309 (1995).  Factors to consider in determining whether the offenses are part of the same transaction or scheme include (1) their proximity in time and location; (2) the identity of evidence between the offenses; (3) similarities in the acts and victims; and (4) whether there was a common method of operation.  
People v. Karraker
, 261 Ill. App. 3d 942, 951, 633 N.E.2d 1250, 1256 (1994).

Defendant argues that the evidence here did not demon­

strate any link between the offenses.  He contends the only unifying factor was the statement defendant made to the police.  He argues there was no 
modus
 
operandi
 other than the fact that four of the crimes charged were armed robberies or attempt (armed robberies).  Each crime took place in a different location and none of the victims were similar to each other.  

The First District Appellate Court, in 
People v. Lewis
, 240 Ill. App. 3d 463, 609 N.E.2d 673 (1992), held defendant's trial counsel was ineffective for failing to file a motion to sever two charges of murder involving different victims.  Accord­

ing to the evidence, there were different motives for the mur­

ders, and the murders occurred at different locations and on different days.  The court found that although the victims' bodies were discovered in the same location, and there were common witnesses to the two murders, that evidence did not lead to the conclusion that the murders were part of the same compre­

hensive transaction.  
Lewis
, 240 Ill. App. 3d at 468-69, 609 N.E.2d at 677.  The court concluded it could "conceive of no legitimate trial strategy in defense of counsel's failure to move for a severance.  [It was] struck by the distinct disadvantage defendant suffered from the joint trial."  
Lewis
, 240 Ill. App. 3d at 469, 609 N.E.2d at 677.  The court noted the impact the cumulative evidence must have had on the jury and found there was no doubt that defendant was prejudiced by counsel's failure to move to sever the charges.  
Lewis
, 240 Ill. App. 3d at 469, 609 N.E.2d at 678.

In 
Karraker
, the defendant's convictions for unrelated charges of unlawful possession of a weapon by a felon, unlawful use of a weapon in that he manufactured a machine gun, and theft were reversed, where the court found it was plain error to try these charges before a single jury.  The court noted "[t]he purpose behind section 111-4(a) [of the Code of Criminal Proced­

ure of 1963] is to protect a defen­dant from the prejudicial effect of a trial on multiple unrelated charges."  
Karraker
, 261 Ill. App. 3d at 951, 633 N.E.2d at 1257.

Other than the August 6, 1996, armed robbery of the L & L Motel and the September 6, 1996, theft from Guns and Games, the offenses involved all occurred on September 1 or 2, 1996.  They all involved many of the same participants, apparently led by Alexander.  These charges were not as attenuated as those in 
Lewis
 and 
Karraker
.  We conclude this joinder was prop­er and counsel was not incompetent for failure to challenge it.  The joinder of the offense of theft of the guns was only incidental to the other offenses and was not enough to convict him of that offense and, because of its weakness, did not create any substan­

tial prejudice to defendant in defending other charg­es.  The failure to challenge this joinder was not incompe­tence of coun­

sel.

The joinder of count I with the other counts creates a more complicated situation.  However, any prejudice was greatly diminished because e­ven if the offense was not charged, evidence of the offense would have been admissi­ble as to the other charg­

es, as it tended to negate defendant's assertion he did not have reason to expect Alexander would commit crimes in the situations involved in the other charges.  
People v. Willer
, 281 Ill. App. 3d 939, 954, 667 N.E.2d 708, 718 (1996); 
People v. Trail
, 197 Ill. App. 3d 742, 746, 555 N.E.2d 68, 71 (1990).  The joinder of the other counts with count I did prejudice defendant in his defense as to count I, because the jury could decide that if defendant committed the other offenses, he was likely to have been guilty as to count I.  Nevertheless, defense counsel's failure to contest the joinder of count I to the other accounts may well have been a strategic decision to limit the State to one prosecu­tion for all the alleged offenses, thus preventing the State from trying him again on other charges if the offenses were not all charged together.  Such strategy would not consti­tute incom­pe­tence.

On cross-examination of the defendant, the prose­cutor asked defendant if two police detec­tives were lying when they said defendant did not report being threatened by Alexander.  Such a questioning was deemed error in 
People v. Barnes
, 182 Ill. App. 3d 75, 86, 537 N.E.2d 949, 955 (1989), and as it was com­

bined with other serious error, a new trial was or­dered.  Howev­

er, in 
People v. Moore
, 80 Ill. App. 3d 996, 1005, 400 N.E.2d 525, 531-32 (1980), and 
People v. Hainline
, 77 Ill. App. 3d 30, 33, 395 N.E.2d 1224, 1227 (1979), similar questioning was stated to be improper but not reversible error when it was not combined with other substantial error.  Accordingly, the failure of counsel to object to this questioning was not incompetence of counsel.

Defendant's theory that his counsel was incompetent for failing to tender an instruction on compulsion is based on his testimony that when he, Alexander, and Betts were riding around before Sonntag was robbed at an ATM, Alexander stated to defen­

dant "man, I ain't playing *** come on, let's go," various general evidence that defendant was scared of Alexander and evidence Alexander had threatened others.

Compulsion is conduct performed under the threat of imminent infliction of death or great bodily harm, which the person reasonably believes will be inflicted if the conduct is not performed.  720 ILCS 5/7-11 (West 1996).  If the affirma­tive defense of compulsion is raised, then the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense.  The Supreme Court of Illinois has stated the failure of the defendant's attorney to tender an instruction on the defense of compulsion and on the prosecution's burden of proof for that defense is ineffec­tive assistance of coun­sel.  
People v. Pegram
, 124 Ill. 2d 166, 174, 529 N.E.2d 506, 509 (1988).

In 
People v. Jones
, 175 Ill. 2d 126, 131-32, 676 N.E.2d 646, 649 (1997), the court stated that a defendant is entitled to an instruction on his theory of the case if there is some founda­

tion for the instruction in the evidence.  The court noted "[v]ery slight evidence upon a given theory of a case will justify the giving of an instruction."  
Jones
, 175 Ill.2d at 132, 676 N.E.2d at 649.

The State notes that "some evidence" has been described as evidence sufficient to raise an issue of fact for the jury.  
People v. Redmond
, 59 Ill. 2d 328, 337-38, 320 N.E.2d 321, 326 (1974).  In 
People v. Phillips
, 186 Ill. App. 3d 54, 61, 541 N.E.2d 1298, 1303 (1989), the defendant testified that he was afraid his codefendant would shoot him if defendant did not do what he said.  The court stated it did not believe defendant's testimony met the standard of "slight evidence" so as to require the compulsion instruction.  The court noted "'[n]ot every remark is specific enough to rise to the level of a direct threat or be so dire a warning as to 
reasonably
 instill the degree of fear of impending harm claimed to necessitate [the] defendant's actions and require an instruction on necessity.'  (Emphasis add­ed.)  (
People v. James
 (1989), 180 Ill. App. 3d 461, 465, 535 N.E.2d 1147, 1150.)"  
Phillips
, 186 Ill. App. 3d at 65, 541 N.E.2d at 1306.

Here, Alexander's remark was not "specific enough to rise to the level of a direct threat."  The other evidence of threat was quite remote, and defendant continued to follow Alex­

ander through the various episodes.  The Sonntag robbery oc­curred on September 2, 1996.  The defendant had been with Alex­ander the day before and remained with him the day after.  These are not the circumstances from which compulsion arises.  Defense counsel was not incompetent in failing to tender a compulsion in­struc­

tion.

At the sentencing hearing, Jon Trivedi testified the injury he received at the robbery at the L & L Motel on August 6, 1996, was a skull fracture.  The defense made no object­ion to this testimony.  Defendant maintains, however, it was inad­mis­si­

ble hearsay, because Jon Trivedi had no expertise in the matter and was necessarily speaking on the basis of what he had been told of this condition by a person with medical exper­tise.  We cannot say that failure to object to this testimo­ny was incompe­

tence because if the testimony was true and ob­jection had been sustained to it, the State might have responded with medical testimony to prove the condition and this would have attracted more attention to the matter.  The failure to object could well have been trial strategy.

Similar evidence was presented at sentencing.  Refer­

ence to this testimony was made at sentencing, which bore upon the question of whether defendant's conduct in the armed robbery created great bodily harm to a victim, thus limiting any credit toward his sentence he could receive for good conduct pursu­ant to the terms of section 3-6-3(a)(2)(iii) of the Code (730 ILCS 5/3-

6-3(a)(2)(iii) (West 1996)).  See also 730 ILCS 5/5-4-1(c-1) (West 1996).  At sentencing the rules in regard to the admission of evidence are more relaxed and hearsay is not neces­sarily excluded.  
People v. Pickens
, 274 Ill. App. 3d 226, 233, 653 N.E.2d 778, 783 (1995).  No incompetence of counsel resulted from the failure at trial or in sentencing to object to Jon Trivedi's testi­mo­ny.

Finally, we come to the question of whether the truth-

in-sen­tencing provision of section 3-6-3(a)(2)(ii) of the Code under which defendant was sentenced for his conviction on count I violates the "single subject rule" of article IV, section 8(d), of the Illinois Constitution of 1970.  This question arises because in 
People v. Pitts
, 295 Ill. App. 3d 182, 691 N.E.2d 1174 (1998), this court held the legislation that originally created the previously cited provision of section 3-6-3(a)(2)(ii) of the Code and that is part the "truth-in-sentencing" legislation was a violation of the "single subject rule" of article IV, section 8(d), of the Illinois Consti­tution of 1970.

The dispute in issue here arises because of the follow­

ing series of events.  The statutory language held invalid in 
Pitts
 arose from Public Act 89-404 (Pub. Act 89-404, §40, eff. August 20, 1995 (1995 Ill. Laws 4306, 4323-27)).  This court held that legis­la­tion invalid under 
Johnson v. Edgar
, 176 Ill. 2d 499, 514-18, 680 N.E.2d 1372, 1379-81 (1997), because 1 of the 10 sepa­rate sec­tions of that act was discordant with the rest of the act.  The offens­es involved in 
Pitts
 occurred April 23, 1996.  Shortly thereaf­ter, the General Assembly enacted Public Act 89-

462 (Pub. Act 89-462, art. 2, §280, eff. May 29, 1996 (1996 Ill. Laws 588, 655-58)), which con­tained all of the "truth-in-sentenc­

ing" provi­sions of Public Act 89-404 without any of the discor­

dant provi­sions of Public Act 89-404.

This court set forth in 
Pitts
 that Public Act 89-462 could not be considered there as validating the "truth-in-sen­

tencing" provisions, because the offenses there occurred shortly before Public Act 89-462 was enacted and to do so would create an unconstitutional 
ex
 
post
 
facto
 application of the law.  Here, however, the offenses occurred in August, September, and October 1996.  The State argues that, accordingly, Public Act 89-462 reenacted and validated those "truth-in-sentencing" provisions as far as this case is concerned.

Defendant responds that Public Act 89-462 did not vali­

date the sentencing provisions in Public Act 89-404.  He contends that the effect of Public Act 89-462 was to add a new offense of predato­ry criminal sexual assault of a child.  Defendant contends that at the time of enactment of Public Act 89-462, no constitu­tion­al challenge had been made to Public Act 89-404 and assuming a legislative intent to reenact is not sensible.

At the heart of defendant's theory is an old common law principle now set forth in section 2 of the Statute on Statutes, which states:

"The provisions of any statute, so far as they are the same as those of any prior stat­ute, shall be construed as 
a
 
continuation
 
of
 
such
 
prior
 
provisions
, 
and
 
not
 
as
 
a
 
new
 
en­actment
."  (Emphasis added.)  5 ILCS 70/2 (West 1996).

Also of consideration is the provision con­tained in article IV, section 8, of the Illinois Constitu­tion of 1970, which states:  "A bill expressly a­mend­ing a law shall set forth com­plet­ely the sec­tions amen­ded."  Ill. Const. 1970, art. IV, §8.

Defendant maintains that, under the foregoing, the restatement of the "truth-in-sentencing" provisions of Public Act 89-402 in Public Act 89-462 was of no consequence because the restatement of the language did not constitute a validation since it was not a new enactment.  He relies on 
People v. Bullard
, 61 Ill. 2d 277, 335 N.E.2d 465 (1975), and 
Svenson v. Hanson
, 289 Ill. 242, 124 N.E. 645 (1919).  Those cases basically concern the situation where statutes are in conflict and the earlier statute is amended as to matters not involved in the conflict.  The question then arises as to whether the required recita­tion of the entire section, including the conflicting language, causes this language to control over the conflicting language in what was previ­ously the later-enacted statute.  In both cases, the court held that the repeated language was not intended to control and was not a new enactment.

The requirement of article IV, section 9, of the Ill­

inois Constitution of 1970, requiring an amendment of a law to set forth the section amended completely has several purpos­es.  One is to enable the reader to understand the struc­ture of the legislative provisions being amended.  Another is to enable other legislators to address the question of whether the law needs further amendment.  While section 2 of the Statute on Statutes indicates that the restatement of a former provision should not be taken as a new enactment, we conclude that rule is not abso­

lute.

In 
Davis v. City of Chicago
, 59 Ill. 2d 439, 322 N.E.2d 29 (1974), the court was faced with the ques­tion of whether a restatement of existing language in a bill which was unconsti­

tutional when originally enacted was a new enactment when stated in a valid bill.  There, article IV, section 23, of the Illinois Consti­tution of 1870 (Ill. Const. 1870, art. IV, §23) had forbid­

den the release or extinguish­ment of any indebted­ness, liability or obligation to the state or any munici­pal corpora­tion.  While that constitution­al provision was in effect, the legisla­ture had enacted section 11-22 of the Public Aid Code (Ill. Rev. Stat. 1967, ch. 23, par. 11-22), which permit­ted the circuit court, in cases where the Illi­nois Depart­ment of Public Aid had a lien on a plaintiff's recov­ery, to compromise the amount of that lien.  That legisla­tion violated article IV, section 23, of the then Illinois Consti­tution of 1870, but no such provision was placed in the Illinois Constitution of 1970.

After the effective date of the Illinois Constitution of 1970, the legislature reenacted section 11-22 of the Public Aid Code, "altering it only to add a provision allowing service of notice"  (
Davis
, 59 Ill. 2d at 442, 322 N.E.2d at 31).  The 
Davis
 court concluded that the reenactment of section 11-22 had vali­dated that restated provision.  The 
Davis
 court stated:

"We are aware of the statutory provision that any statute which is the same as a prior statute shall be construed as a continuation of such prior provision and not as a new enactment.  (Ill. Rev. Stat. 1973, ch. 131, par. 2.)  In this case, however, we 
have
 
an
 
unusual
 
situation
 involving a statute that may have been subject to successful constitu­

tion­al challenge under the former constitu­

tion but 
has
 
now
 
been
 
reenacted
 
under
 
the
 
1970
 
Con­stitution
 in which the provisions of the 1870 Constitution giv­ing rise to the chal­lenge do not ap­pear.  
We
 
also
 
note
 
that
 
sec­tion
 
11-22
 
was
 
reenacted
 
after
 
the
 
opin­

ions
 in 
Davis v. City of Chicago
, 13 Ill. App. 3d 160[, 301 N.E.2d 35], 
Madison v. Reu­

ben
, 10 Ill. App. 3d 16[, 293 N.E.2d 700], and 
Bender v. City of Chicag
o, 8 Ill. App. 3d 267[, 290 N.E.2d 376], all of which raised questions as to the va­lidity of section 11-22 with differ­ing re­sults.  Under these circum­

stances it may be fairly said that the intent of the legisla­ture, and its principal pur­

pose, in reenact­ing section 11-22 with only a minor change was to 
dispel
 
the
 
questions
 
as
 
to
 
its
 
validi­ty
."  (Emphasis added.)  
Davis
, 59 Ill. 2d at 444, 322 N.E.­2d at 32.

Here, as in 
Davis
 and unlike in 
Bullard
 and 
Svenson
, we have an unusual situation, whereby language in a former bill, which was previously encumbered by other factors that ren­dered it constitutionally invalid, is restated in a bill under circum­

stances whereby it is constitutionally valid.  In 
Davis
, the language was invalid under the provisions of the Constitution of 1870.  When restated, the language was not contrary to the Constitution of 1970 then in force and was treated as a new enactment.  Here, we have language rendered invalid by the dis­

cordant provisions of the prior bill restated under circumstances in which it is clearly valid.  It should similarly be treated as a new enact­ment.

Defendant further contends that Public Act 89-462 was enacted before 
Pitts
 or 
Johnson
 and thus no intention to validate the "truth-in-sentencing" provision of Public Act 89-402 was likely to have existed.  However, long before 
Pitts
 or 
Johnson
 was decided by the respective reviewing courts and before the enactment of Public Act 89-402, on May 7, 1996, the circuit court of Cook County had applied the single subject rule in 
Johnson
.  In 
Fuehr­me­yer v. City of Chica­go
, 57 Ill. 2d 193, 311 N.E.2d 116 (1974), legisla­tion had also been declared unconstitutional under the single subject rule.  Legislators could easily have heard of these cases and acted to validate the sentencing provision in­

volved here.

We affirm all the convictions and sentences imposed here.  We hold that Public Act 89-462 validated the truth-in-

sentencing provi­sions applied here.

Affirmed.

COOK and McCULLOUGH, JJ., concur.