2023 IL App (1st) 220829-U

SIXTH DIVISION
August 25, 2023

No. 1-22-0829

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CR 2913 |
| | ) | |
| KEVON SCURLOCK, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE TAILOR delivered the judgment of the court.
Presiding Justice Mikva concurred in the judgment.
Justice C.A. Walker dissented.

**ORDER**

¶ 1    *Held*:  The defendant did not receive ineffective assistance of counsel.

¶ 2    Following a bench trial, defendant, Kevon Scurlock, was convicted of two counts of unlawful use or possession of a weapon by a felon based on his possession of firearm ammunition. Scurlock was sentenced to four years' imprisonment to run consecutively with

sentences he received for convictions on two other unrelated matters for which he pled guilty. Scurlock now appeals and argues that he received ineffective assistance of counsel. For the following reasons, we affirm the judgment of the trial court.

¶ 3                                  BACKGROUND

¶ 4      On February 4, 2021, at approximately 11 a.m., Chicago Police Officers Lawrence Kerr and Delgado Fernandez were part of a team that executed a search warrant at a single-family home located at 7749 South Saint Lawrence Avenue in Chicago. The officers knocked on the door of the home and co-defendant Raymound Sankey[1] answered. While the officers were at the door with co-defendant, Scurlock approached. Officers Kerr and Fernandez detained Scurlock and Raymound while the rest of the team entered the residence to execute the search warrant.

¶ 5      Officer Kerr remained in the living room with Scurlock and Raymound while the other officers secured the rest of the residence and determined there were no other occupants. Once the residence was secure, Officer Kerr photographed every room before the other officers began searching. The first floor of the single-family residence had a small foyer and a living room to the right of the entrance. After he completed photographing the first floor, Officer Kerr photographed the second floor, including two bedrooms. The bedroom on the west side of the second floor had a television stand and a bed, and the bedroom on the east side of the second floor appeared to be a child's bedroom. Officer Kerr then went to the basement. There was a bedroom on the east side of the basement with a living area or "common area" adjacent to the bedroom.

_____

[1]      Raymound and Scurlock were tried in simultaneous bench trials and were represented by the same attorney at trial. Raymound is not a party to this appeal.

¶ 6     Officer Kerr observed in the basement bedroom on the windowsill a temporary state of Illinois identification card in Scurlock's name, a credit card in Scurlock's name, and a piece of mail that was forwarded from another address to the South Saint Lawrence Avenue house addressed to Scurlock, dated December 9, 2020.  Officer Kerr also observed a photograph of Scurlock with another unknown male "wedged into the window frame." Officer Kerr photographed the items he observed in the windowsill and Officer Fernandez recovered and inventoried the items.

¶ 7     In the closet of the basement bedroom, Officers Kerr and Fernandez observed a plastic dresser with three drawers. Officer Fernandez located one .45 caliber bullet in the top drawer, three photographs of Scurlock, two of Scurlock with a female and one of Scurlock licking a human foot. The items were photographed and recovered.

¶ 8     In the common area of the basement, adjacent to the bedroom, Officer Kerr observed a pool table and a counter area with drawers beneath the counter.  A few of the drawers were "pulled out." In the top-drawer Officer Kerr observed pieces of mail with Scurlock's name. In the drawer below, Officer Kerr observed an extended magazine and three .40 caliber bullets. Three pieces of mail addressed to Scurlock were located on the top of the counter above the drawers.  There were six pieces of mail addressed to Scurlock that were recovered from the counter and drawers in the common area. Three of the six pieces had been forwarded from a previous address to the South Saint Lawrence Avenue address and "the other ones had the Cook County Sheriffs' information regarding his person." One of the pieces of mail recovered from the top of the counter was an order confirmation or "receipt" from Saks Fifth Avenue for an order placed on January 16, 2021, in Scurlock's name, with the delivery address of 7749 South Saint

Lawrence Avenue, the address where the warrant was executed. Officer Kerr photographed the items and Officer Fernandez recovered them.

¶ 9     The parties stipulated that Scurlock was a convicted felon under case number 17CR 003556 for the offense of aggravated unlawful use of a weapon and that conviction was entered on June 9, 2017. The State rested, and the defense made a motion for "acquittal of defendants," which was denied.

¶ 10     Kenyada Lester, Scurlock's mother, testified for the defense. Kenyada testified that she leased the residence at 7749 South Saint Lawrence Avenue. She lived there with her four children: Darrialmond Sankey, Ja-Mah Sankey, Nevaeh Lester and Heaven Lester, all under the age of 15. She indicated that she moved into the residence in March of 2020.  Scurlock, who is her oldest son, had come to live with her in November or December of 2020 because he was on electronic monitoring. Kenyada acknowledged on cross examination that Scurlock was living at the residence on South Saint Lawrence Avenue on February 4, 2021, the day the warrant was executed, and that he lived in the basement.

¶ 11     Raymound is the father of her other four children, but he had had been living in Missouri since April of 2019 with his mother. Raymound came to stay with Kenyada in February of 2021 and stayed in her bedroom on the second floor. Raymound was on house arrest and received mail at the residence.  Kenyada's ten-year-old daughter stays in the other bedroom on the second floor. The defense rested.

¶ 12     During closing argument, defense counsel argued that the State failed to prove constructive possession of the ammunition because Scurlock was not the lessee of the residence and was not present in the unlocked room where the bullet was found.  In addition, defense

counsel argued that the ammunition and magazine were found in a common room where "it seems that every resident of the house would have access to that area." Furthermore, defense counsel highlighted that there were no fingerprints on the ammunition and no locks on the basement bedroom door. Also, Scurlock had not made any admissions regarding the ammunition or the magazine. Based on this, counsel argued that "there is no evidence of knowledge by [Scurlock]" and "no argument that can be made that [Scurlock] had exclusive control" of the bedroom and common area in the basement.

¶ 13    Defense counsel reminded the court that "both [Scurlock and Raymound] came to the front door" when the police arrived. Raymound 'voluntarily opened doors for the officers." Defense counsel argued that Scurlock's actions could not be considered consistent with the actions "of people who are aware of or have knowledge of any contraband in the house" because "it's not your usual scramble to toss or conceal any contraband." Defense counsel noted that Scurlock was polite to the officers and did not attempt to flee. He also reiterated that the State failed to establish "all the necessary elements of constructive possession."

¶ 14    The trial court found Scurlock and Raymound guilty. With respect to Scurlock the court found:

> "But aside from the pictures, the police also find the following things significant: When lawyers use the term "proof of residence," that's a misnomer. They don't have to prove that [defendant] lived there, which apparently the evidence showed he did anyway. They have to really prove he had access and control and knowledge. Not that he lived there.
>
> ***

What does he have there that's important? A Saks Fifth Avenue shipping summary bill dated January 16th. So what are we talking about, two weeks later is the arrest, a little over two weeks later. ***What else did they find that's significant regarding [Scurlock]? It's a credit card of some sort or another ***. Something you want to know where it's at and keep is a credit card. You don't want somebody else getting your credit cards. And then additionally***a statement of some sort, notice of decision, State of Illinois Department of Human Services. Beginning January 1st, 2021, your benefits will change as follows. Medical benefits***that's important to keep around, a record of what you're going to get as far as money from some other resource.

* * *

Scurlock's mother, which was or is the other man's girlfriend, former girlfriend, current girlfriend, whatever, basically put altogether, indicates beyond a reasonable doubt in my opinion that Scurlock stayed in the basement. Her son stayed in the basement with the stuff in the basement and that her former or current boyfriend, whatever, the father of four of her children stayed upstairs in the bedroom with her which is where they found the gun in the bedroom and all the other stuff attributable to Sankey in the same bedroom and the bullet downstairs in the basement attributable, in my opinion, to Kevon Scurlock.

Hardly an earth-shattering offense, having one bullet. But nonetheless, one maybe three or four altogether. A minimum of one anyway. They found other stuff down there, too. Hardly an earth-shattering offense but nonetheless your client's convicted for an offense, he cannot possess any weapons or ammunition for weapons. They have to use discrete judgment. If you don't do it, it constitutes a crime. Is it like a capital offense kind

of a case to have a bullet with a felony conviction? It's not a capital offense, but, nonetheless, it's against the law to have one. I don't get involved with morals and stuff like that, whether one doesn't mean anything or 25 means something, it's illegal to have even a bullet.

As far as upstairs with Sankey, he can't have any guns at all as a convicted felon. And I don't believe that the testimony of Sankey's former girlfriend aids the case of the defense at all. As a matter of fact apparently she wasn't even there at the time on February 4th. Basically she shows, from the evidence I heard, (unintelligible) anyways -- I'm not critical of the defense for calling her – established that they both lived there. When Sankey's questioned about the bedroom -- questioned about where he lives, upstairs, you know. The evidence shows it wasn't the little girl's bedroom, the gun and other stuff they found."

¶ 15    The trial court ruled, "as far as both, the State has proved beyond a reasonable doubt both charges, the charges against [Scurlock]*** one, maybe three or four bullets, and for [Raymound] the gun." The court sentenced Scurlock to four years' imprisonment.  Although the record reflects that this matter was scheduled for post-trial motions on the same day as sentencing, a written motion for a new trial does not appear in the common law record and no oral arguments related to a motion for a new trial appear in the record of proceedings.  Scurlock filed a timely notice of appeal.

¶ 16                                    ANALYSIS

¶ 17    Scurlock does not challenge the sufficiency of the evidence against him and does not point out any flaws in the State's case that would call into question the court's finding of guilty

beyond a reasonable doubt. Instead, Scurlock argues that trial counsel was ineffective pursuant to *United States v. Chronic*, 466 U.S. 648 (1984), where counsel, operating under a misapprehension of the law, not only conceded that Scurlock constructively possessed the contraband, but actually produced evidence establishing Scurlock's possession. As a result, defense counsel failed to subject the State's case to a meaningful adversarial challenge. In the alternative, Scurlock argues that counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984).

¶ 18    When faced to challenges to trial counsel's ineffectiveness, we generally apply the two-prong test established in *Strickland,* 466 U.S. 668, and adopted in Illinois in *People v. Albanese*, 104 Ill. 2d 504 (1984). To prevail on a claim of ineffective assistance of counsel under *Strickland*, a defendant must show that (1) counsel's performance was deficient and (2) counsel's actions resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Evans,* 209 Ill. 2d 194, 220 (2004). Under the first prong, a defendant must demonstrate that his attorney's performance fell below an objective standard of reasonableness. *Evans*, 209 Ill. 2d at 220. Under the second prong, prejudice is shown where there is a reasonable probability that the result would have been different but for counsel's alleged deficiency. *Id.* Failure to satisfy either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. *Strickland*, 466 U.S. at 697.

¶ 19    However, the *Strickland* court also noted that there are some circumstances so likely to prejudice a defendant that prejudice may be presumed. *Strickland*, 466 U.S. at 692. In *United States v. Cronic*, 466 U.S. 648 (1984), the Court explained that with respect to ineffective assistance of trial counsel claims, prejudice may be presumed where (1) the defendant "is denied

counsel at a critical stage," (2) counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing," or (3) counsel is called upon to represent a client in circumstances under which no lawyer could provide effective assistance. *Id*. at 659-61. Here, Scurlock argues that defense counsel's performance at trial triggers the second *Cronic* exception because he failed to subject the State's case to meaningful adversarial testing. We disagree.

¶ 20     The second *Cronic* exception to *Strickland's* prejudice requirement is "narrow" and applies "infrequently." *People v. Cherry*, 2016 IL 118728, ¶27 (quoting *Florida v. Nixon*, 543 U.S. 175, 190 (2004)). Our supreme court has explained that the second *Cronic* exception applies only when "counsel's effectiveness has fallen to such a low level as to amount not merely to incompetence, but to no representation at all." (Internal quotation marks omitted.) *People v. Caballero*, 126 Ill. 2d 248, 267 (1989) (citing *Cronic*, 466 U.S. at 659)). Since *Cronic*, our supreme court has only found *per se* ineffectiveness under the second *Chronic* exception twice. *People v. Cherry*, 2016 IL 118728, ¶27. The first time was in *People v. Hattery*, 109 Ill. 2d 449 (1985), and the second was in *People v. Morris*, 209 Ill. 2d 137 (2004), *overruled in part on other grounds* in *People v. Pitman*, 211 Ill. 2d 502 (2004). *Cherry*, 2016 IL 118725, ¶27.

¶ 21     In *Hattery*, the defendant was charged with the murders of a mother and her two children. The defendant pleaded not guilty. *Hattery,* 109 Ill. 2d at 458. During his opening statement, one of defendant's attorneys conceded that defendant had committed the murders and was eligible for the death penalty but argued that the only issue was whether the defendant should be sentenced to death. *Id.* at 458-59. At trial, the defendant's attorneys advanced no theory of defense, presented no evidence, and did not make a closing argument. *Id*. Defense counsel did attempt to establish through cross-examination that the defendant was compelled to kill the

victims. *Id*. However, compulsion is not a defense to murder; it may merely serve as a mitigating circumstance sufficient to preclude the imposition of the death penalty. *Id*.

¶ 22    Our supreme court held that defense counsel's actions did not subject the prosecution's case to the meaningful adversarial testing as required by the sixth amendment. *Id*. at 464. The *Hattery* court noted that the strategy employed by defense counsel–to show that the defendant was guilty of murder but undeserving of the death penalty–was inconsistent with the defendant's plea of not guilty. *Id*. at 464. The court held that "[c]ounsel may not concede his client's guilt in the hope of obtaining a more lenient sentence where a plea of not guilty has been entered, unless the record adequately shows that defendant knowingly and intelligently consented to his counsel's strategy." *Id*. at 465.

¶ 23    In *Morris*, defense counsel "readily admitted" defendant's guilt to the jury during opening statement. 209 Ill. 2d at 182. This admission of guilt was intended to lay the groundwork for a plea of jury nullification based on sympathy or compassion, which the *Morris* court characterized as "a minimal, nonlegal defense." *Id*. at 184. Notwithstanding, our supreme court emphasized that "defense counsel's performance in the case at bar cannot be considered *per se* ineffective simply because the defense * * * offered at trial was a nonlegal plea for jury sympathy." *Id*. After admitting guilt and pursuing a nonlegal defense, defense counsel then introduced evidence of the defendant's involvement in an unrelated murder, even though the trial court had previously found the evidence inadmissible at defense counsel's request. *Id*. at 184-85. The court found that trial counsel was *per se* ineffective based on the "unusual convergence of errors" (*id*. at 187), stating, "[d]efense counsel's erroneous understanding of the trial court's ruling on the [other] murder opened the door to the introduction of graphic details regarding the

murder, to the State cross-examining defendant for 45 minutes about the crime, and to defendant's admission of guilt for that murder." *Id.* This was not only inherently prejudicial to the defendant but, "[o]nce defense counsel introduced the extensive and inflammatory evidence regarding the [other] murder, the minimal but constitutionally acceptable strategy of appealing to the jury's sympathy regarding the murder [at issue] was utterly negated." *Id.* at 187-88. Accordingly, the court concluded that "there was a breakdown of the adversarial process during defendant's trial such that there was no meaningful adversarial testing of defendant's case." *Id.* at 188.

¶ 24 Unlike the defense attorneys in *Hattery* and *Morris*, who conceded guilt, defense counsel in this case subjected the State's case to meaningful adversarial testing. Given the overwhelming evidence that Scurlock resided in the basement, the possible trial strategies available to defense counsel were entirely limited. Nevertheless, as we explain further below, defense counsel thoroughly represented Scurlock and challenged the State's case by arguing that the State had failed to prove constructive possession of the ammunition.

¶ 25 Here, the State alleged that Scurlock constructively possessed ammunition found in the basement bedroom and basement common area of the home in which he resided. Constructive possession exists where there is no actual, personal, present dominion over contraband, but defendant had knowledge of the presence of the contraband and had control over the area where the contraband was found. *People v. Hunter*, 2013 IL 114100, ¶ 19; *People v. Davis,* 2021 IL App (3d) 180146, ¶ 72. Knowledge may be inferred from circumstantial evidence. *People v. Terrell*, 2017 IL App (1st) 142726, ¶ 18. Proof of defendant's mere presence in the premises where contraband is found is not sufficient; instead, there must be evidence that the defendant

controlled the premises or the contraband itself, which may be shown by defendant's habitation in the premises where contraband is discovered. *People v. Spencer,* 2012 IL App (1st) 102094, ¶ 17. Proof of residency in the form of rent receipts, utility bills, and clothing in closets is relevant to show that defendant lived on the premises and therefore controlled them. *Terrell,* 2017 IL App (1st) 142726, ¶ 19.

¶ 26 Defense counsel entered a plea of not guilty, and extensively cross-examined the two State witnesses. Through cross-examination of the officers, defense counsel was able to establish that Scurlock was not found in actual possession of any contraband or in close proximity to the contraband, that no fingerprints were recovered from the bullets, and that the officers did not see Scurlock in the basement bedroom or common area where the ammunition was found. In addition, defense counsel established that Scurlock never attempted to flee the residence or discard contraband when the police arrived. In addition, defense counsel called Kenyada, who established that she was the lessee of the residence and that six other people also lived in the residence. Kenyada's testimony enabled defense counsel to argue that the State could not meet its burden to establish the knowledge and control elements of constructive possession.

¶ 27 Scurlock, however, argues that defense counsel did not go far enough in questioning Kenyada, stating that "[w]ithout evidence that others used the basement living room and/or bedroom, the fact that someone else could have accessed the living room or bedroom is immaterial. Counsel needed to show that other residents or guests used the basement bedroom and/or living room. But Kenyada never testified that she or anyone else resided in the basement or used the living room." We disagree.

¶ 28 As a threshold matter, Scurlock's argument rests entirely on speculation that Kenyada

would have offered such testimony if defense counsel had merely inquired.  We see no reason to draw that conclusion. More to the point, however, Kenyada testified that she was the lessee of the property and that six other people lived in the home at the time, which was enough for defense counsel to then argue that the ammunition could have belonged to any of the other six people who resided in the house and that the State failed to prove beyond a reasonable doubt that Scurlock had knowledge of and control over the area where the ammunition was recovered. From Kenyada's testimony a reasonable factfinder could infer that Kenyada and the six other people living in the house at 7749 South Saint Lawrence on February 4, 2021, could have had access to and control of the common areas and Scurlock's unlocked bedroom.  *People v. Campbell*, 146 Ill. 2d 363, 374-75 (1992) (the trier of fact is allowed to draw reasonable inferences from basic facts to ultimate facts.)  Although we recognize that others' access to the ammunition found in the basement does not necessarily defeat the possibility of Scurlock possessing them (*People v. Hill*, 226 Ill. App. 3d 670, 673 (1992)), it does provide an explanation for how such items could have made their way into the home without Scurlock's knowledge.

¶ 29     Without Kenyada's testimony about the six other people who resided in the home at the time of Scurlock's arrest, there would have been no evidence in the record upon which defense counsel could have advanced such an argument in closing.  Based on evidence elicited in cross of the State's witnesses, and Kenyada's testimony on direct, defense counsel's theory at trial that, although Scurlock lived in the basement bedroom, he did not constructively possess the ammunition at issue, was not entirely inconceivable. Nor was it unreasonable.

¶ 30     A number of cases illustrate why counsel was not *per se* ineffective because of the

defense theory he employed. In *People v. Maldonado*, 2015 IL App (1st) 131874, upon execution of a search warrant, the police found heroin hidden in a statue on a bedside table and ammunition in a box on a bedroom dresser and in a kitchen drawer. Although the defendant was not present at the time of the search, the State asserted that he resided at the location. *Id*. at ¶26. With respect to the heroin and ammunition, this court concluded that even if the State proved that the defendant had control over the premises, it failed to prove that the defendant had knowledge of the contraband. Regarding the heroin, we observed that the State failed to present any evidence that would suggest or allow the inference that the defendant was aware of the drugs inside the enclosed statue. *Id*. at ¶ 41. As for the ammunition found in the kitchen drawer, although the kitchen was a common area for all occupants, the State failed to present any evidence "that the defendant was in proximity to the ammunition at or after it was placed in the kitchen to allow a reasonable inference that he knew of its presence." *Id*.  Similarly, in *People v. Wolski*, 27 Ill. App. 3d 526 (1975), the police executed a search warrant in the apartment where the defendant and his brother resided.  Other people also had access to the apartment. During the search, the officers discovered marijuana. *Id*. at 527. This court held that the State failed to prove that the defendant constructively possessed the contraband, because it did not offer any evidence connecting the marijuana to the defendant, as opposed to the defendant's brother or the other number of people who frequented the apartment. *Id*. at 528–29.

¶ 31      Because a reasonable factfinder could infer that Scurlock did not constructively possess the ammunition based upon Kenyada's testimony and defense counsel's argument, defense counsel did not pursue such an unreasonable strategy that we must assume Scurlock was *per se* prejudiced. That the trial court found Kenyada's testimony "basically put [the case] altogether"

does not in any sense establish that defense counsel was *per se* ineffective. We note that the court went on to say that "I'm not critical of the defense for calling her." We therefore find no *per se* ineffectiveness under *Cronic*.

¶ 32 Scurlock, however, argues that pursuant to *People v. Salgado*, 200 Ill. App. 3d 550 (1990), we must find counsel ineffective under *Cronic*. In *Salgado*, the defendant was charged along with two of his codefendants with residential burglary and theft. At trial neither the State nor defense counsel made opening statements. Although neither of his codefendants testified at trial, defense counsel called defendant as a witness and during direct examination elicited a confession to the offense of residential burglary. In addition, defense counsel presented no defense other than to assert during closing argument that defendant had a right to explain his participation in the crime. *Id.* at 553. The court found Salgado guilty of residential burglary and his codefendants guilty of theft. In so finding, the trial judge stated that prior to defendant's testimony, he anticipated finding defendant guilty of just theft, but because defendant admitted that he committed the residential burglary, the court had no choice but to convict him of that offense. We found that defense counsel's conduct amounted to ineffective assistance because "by pleading not guilty, defendant was entitled to have the issue of his guilt or innocence of residential burglary presented to the court as an adversarial issue." *Id.*

¶ 33 We find *Salgado* factually distinguishable from the case at bar. This was not a case where defense counsel conceded Scurlock's guilt or failed to provide a defense. As previously stated, defense counsel's strategy was restricted by the overwhelming evidence that Scurlock resided in the basement bedroom and the defense theory of seeking to sow doubt of Scurlock's guilt by offering evidence that others in the household had access to the basement bedroom and

common room where the ammunition was found was not entirely unreasonable. Scurlock has not shown that his defense counsel entirely failed to subject the prosecution's case to meaningful adversarial testing.

¶ 34    We now turn to Scurlock's ineffective assistance of counsel claim under *Strickland*. Scurlock argues that but for counsel's comments and Kenyada's testimony, he would not have been convicted. Specifically, Scurlock argues that his trial counsel was ineffective because counsel admitted that the basement bedroom was Scurlock's in opening and closing when he said, "[Scurlock's] room" and that "[Scurlock] was staying with his mother," and then called Scurlock's mother as a witness to corroborate this. Kenyada testified that Scurlock had been living with her since being placed on electronic home monitoring in December. Kenyada further testified that Scurlock "stay[ed] in the basement." Scurlock also argues that defense counsel had a fundamental misunderstanding of the law of constructive possession in that defense counsel relied on his mistaken belief that the State could not prove constructive possession, despite the fact that Scurlock lived in the basement, because Scurlock's name was not on the lease, his mother could have entered the basement if she wanted to, and he did not admit to possessing the bullets. Scurlock argues that defense counsel basically admitted that Scurlock constructively possessed the ammunition in this case.

¶ 35    To review, under the first prong of *Strickland*, a defendant must demonstrate that his attorney's performance fell below an objective standard of reasonableness. *Evans*, 209 Ill. 2d at 220. Under the second prong, prejudice is shown where there is a reasonable probability that the result would have been different but for counsel's alleged deficiency. *Id.* Failure to satisfy either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. *Strickland*,

466 U.S. at 697.

¶ 36    "[T]he choice of defense theory is ordinarily a matter of trial strategy, and counsel has the ultimate authority to decide this trial strategy. [Citation.] This court will generally not review a claim of ineffectiveness of counsel based on inadequate trial strategy." *People v. Guest*, 166 Ill. 2d 381, 394 (1995). An exception is "where counsel entirely fails to conduct any meaningful adversarial testing." The fact that another attorney might have pursued a different strategy or that the strategy chosen by counsel ultimately proved unsuccessful, does not demonstrate incompetence or suggest ineffective representation. *People v. Fuller*, 205 Ill. 2d 308, 331 (2002).

¶ 37    The State presented significant evidence of Scurlock's control over the basement bedroom where the ammunition was found.  Scurlock was present at the residence when the police arrived.  Inside the basement bedroom, officers found a temporary State identification card in Scurlock's name, a credit card in Scurlock's name, several photographs of Scurlock, and a piece of mail dated December 9, 2020, that was addressed and forwarded to Scurlock at the residence on South Saint Lawrence Avenue from another address.  In addition, the State presented evidence of Scurlock's control over the counter and drawers in the basement common area where the additional ammunition was located. On top of the counter there were multiple pieces of mail addressed to Scurlock, including correspondence from the Cook County Sheriff's Office, and a receipt for items ordered from a department store to be delivered to Scurlock at the South Saint Lawrence Avenue residence.

¶ 38    Defense counsel attempted to challenge Scurlock's constructive possession of the ammunition in this case by arguing that Scurlock was not the lessee of the residence, Kenyada was.  Defense counsel also argued that although Scurlock's personal items and mail were found

in the basement bedroom and in and on top of the drawers in the common area of the basement, other people resided in the home and had equal access to those areas so that the ammunition could have belonged to someone other than Scurlock. Furthermore, defense counsel highlighted that there was no physical evidence presented that established that the ammunition belonged to Scurlock and that the officers did not see Scurlock in the bedroom or the common area of the basement.

¶ 39     We disagree that defense counsel's performance was unreasonable for these reasons and for the reasons discussed in resolution of Scurlock's *Cronic* argument. Defense counsel's theory in this case was that while Scurlock lived in the basement, there were six other people who lived in the house at that time who had access to both the basement bedroom and the common area in the basement. Kenyada's testimony established that other people were living in the home and therefore, the ammunition and magazine could have belonged to anyone. As we see it, based on the evidence that the State presented, this was defense counsel's only viable strategy.

¶ 40     Scurlock relies on *People v. Chandler*, 129 Ill. 2d 233 (1989), to support his argument that counsel's performance in this case was deficient. In *Chandler*, the defendant and his codefendant were charged with murder, residential burglary, and aggravated arson. *Id*. at 238. At trial, the defendant's attorney conceded that the defendant had entered the victim's house but argued that it was the codefendant who had stabbed the victim. *Id*. at 239. Counsel apparently mistakenly believed that the jury could find the defendant not guilty if it believed that he had not personally inflicted the fatal wounds. *Id*. at 247. Nevertheless, the jury was instructed on both felony murder and accountability and thus "had no choice but to find [the] defendant guilty of

murder." *Id.* Defense counsel also failed to cross-examine several key witnesses, and called no witnesses to testify, not even the defendant, whom counsel had asserted would be called during opening statement. Hence, the *Chandler* court held that defense counsel was ineffective. "By failing to comprehend the law of accountability and felony murder, counsel's strategy and actions amounted to no real defense at all. The prosecution's case, therefore, was not subject to meaningful adversarial testing, and defendant was deprived of a fair trial." *Id.* at 249. The court stated:

> "Even when presented with a difficult case, counsel must provide reasonably effective
> assistance to a defendant. Counsel failed to do so here. Counsel's defective performance
> clearly prejudiced defendant, as the jury was forced to convict defendant of the offenses
> charged. We also find that there is a reasonable probability that but for counsel's
> deficient performance, the result of the trial would have been different." *Id.* at 250.

¶ 41     Here, in contrast to *Chandler*, defense counsel extensively cross-examined the State's witnesses and presented testimony that aligned with his theory of defense. It was the strength of the evidence presented by the State that seriously undermined any claim of innocence that Spurlock could muster, not counsel's comments or Kenyada's testimony.

¶ 42     In reality, defense counsel had two options in this case. The first was to call Kenyada to establish that six other individuals were residing in the home on the date of the arrest and allow the trier of fact to infer that those individuals had access to all the rooms in the home, including Scurlock's bedroom and the common areas of the basement. The second was to merely argue that the State's evidence was insufficient to establish his guilt beyond a reasonable doubt. Counsel made a strategic decision to pursue the former strategy. We make every effort to

evaluate counsel's performance from his perspective at the time, rather than through the lens of hindsight. *People v. Madej*, 177 Ill. 2d 116, 157 (1997). We cannot now second-guess counsel's strategic decision in this case, particularly considering that the trial court denied defense counsel's motion for "acquittal of defendants" after the State rested its case. Defense counsel's strategy may have been risky, but it was a reasonable strategy nonetheless, particularly where the trial court had denied the defense motion for "acquittal of defendants" after the State rested its case.

¶ 43    We find this case to be more similar to *People v. Shatner*, 174 Ill. 2d 133 (1996), and *People v. Ganus*, 148 Ill. 2d 466 (1992). In *Shatner*, the defendant was convicted of first-degree murder, armed robbery, and arson. The defendant appealed and argued that defense counsel was ineffective for failing to present a defense to the charge of felony murder. During closing argument, defense counsel told the jury " 'if he's guilty of anything, he's guilty of robbery.' " *Shatner*, 174 Ill. 2d at 143. The defendant argued that his counsel was ineffective because he admitted to felony murder by conceding the defendant took part in a robbery during which the victim was killed. *Id*. at 145. Our supreme court distinguished its decision in *Chandler*, stating claims of ineffective assistance must be reviewed on a case-by-case basis. *Id*. at 147. The court stated that its finding of ineffectiveness in *Chandler* was not based solely on the defendant's alleged failure to develop a theory of innocence, but also on counsel's failure to cross-examine witnesses and failure to call any witnesses to testify. *Id*. ¶ 180. The supreme court compared the representation offered by the defense attorney in *Shatner* with the defense attorney in *Chandler*, finding that in *Shatner* counsel "aggressively cross-examined" nearly every prosecution witness and called witnesses on defendant's behalf to attempt to discredit the State's witnesses and

bolster defendant's credibility. The court noted defense counsel tried to minimize his client's admitted involvement in the robbery scheme and shift the blame for both the murder and robbery onto another person who voluntarily accompanied the defendant to the crime scene. Defense counsel "aggressively attacked the credibility of [this other person] and portrayed her as a calculating cocaine addict who seduced defendant into assisting her in a robbery during which she killed the victim." *Id.* at 148. "It is apparent that defense counsel sought to convince the jury that defendant's minimal involvement in the scheme warranted either a finding of innocence or a conviction for robbery only. While this strategy was risky, it was strategy nonetheless, and perhaps the only strategy which could have been seriously pursued given defendant's admissible incriminating statements and the overwhelming evidence of his guilt." The court further noted:

> "Ultimately, it was the defendant's own statements, both to the FBI and on the witness stand, and not the actions or strategy of his counsel, which undermined any claim of innocence that defendant may have had. If a defendant enters a not-guilty plea in the face of overwhelming evidence of his guilt, we are unwilling to find that his counsel was ineffective simply because he failed to contrive a leak-proof theory of innocence on defendant's behalf. To do so would effectively require defense attorneys to engage in fabrication or subterfuge." *Id.* at 148.

¶ 44 In *Ganus*, 148 Ill. 2d 466, the defendant was convicted of first-degree murder and argued that trial counsel was ineffective because he elicited prejudicial testimony about gang activity and the defendant's ties to the gang. This testimony had been introduced in an effort to establish an affirmative defense of compulsion, a defense not available to the defendant. Our supreme court concluded that trial counsel was not ineffective, stating:

"What the instant case presents is a situation where the defendant literally had no defense. Evidence of his guilt was overwhelming. His counsel conceived a compulsion defense which, though not a legal defense, could or might have persuaded a jury not to convict. Jury nullification is always a possibility. It is not inconceivable that a compulsion defense might have evoked empathy, compassion or understanding and sympathy in the minds of the jurors. It is a truism that if a man is drowning, he will grasp at a straw that comes floating by. A weak or insufficient defense does not indicate ineffectiveness of counsel in a case where a defendant has no defense. In this case it would appear that defense counsel used his imagination and resourcefulness to come up with something where he had nothing to go on." *Id.* at 473-74.

¶ 45    While we need not determine whether Scurlock suffered prejudice because a criminal defendant must show both unreasonable performance *and* prejudice under *Strickland,* we nevertheless find that Scurlock suffered no prejudice as a result of defense counsel's comments and his decision to elicit certain testimony from Kenyada.  First, defense counsel's comments made during opening and closing arguments are not evidence.  Second, notwithstanding counsel's comments and Kenyada's testimony, given that the evidence that Scurlock lived in the basement bedroom where the ammunition was found was so strong, there is simply no "reasonable probability" that the result would have been different without those comments or testimony. Based on the court's comments in finding Scurlock guilty, it is clear that the court relied on Scurlock's personal items that were found in the bedroom and on the counter in the common area to find Scurlock guilty and certainly not solely or even predominantly on the basis

of Kenyada's testimony. We simply cannot find any reasonable probability of a different result because of this choice by defense counsel.

¶ 46    Accordingly, we find that trial counsel was not ineffective as counsel's representation was not unreasonable and Scurlock suffered no prejudice where the evidence of Scurlock's constructive possession was sufficient.

¶ 47                                CONCLUSION

¶ 48    Based on the foregoing, the judgment of the circuit court is affirmed.

¶ 49    Affirmed.

¶ 50    JUSTICE C.A. WALKER, dissenting:

¶ 51    I respectfully dissent because I would find counsel was ineffective pursuant to *Strickland* by misapprehending the law on joint possession and mistakenly believing that Kenyada's testimony precluded a finding of constructive possession. The majority found defense counsel rendered effective assistance pursuant to *United States v. Chronic*, 466 U.S. 648 (1984), because counsel subjected the State's case to meaningful adversarial testing by extensively cross-examining two State witnesses and presenting Kenyada's testimony to establish doubt that Scurlock had constructive possession of the ammunition. The majority also found counsel rendered effective assistance pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), because (1) counsel's performance was reasonable where he presented Kenyada's testimony as a viable defense strategy and (2) no prejudice occurred where the State presented overwhelming evidence that Scurlock had constructive possession of the contraband despite Kenyada's testimony. I disagree with the majority's assessment of the case.

¶ 52    As the majority asserts, to state a claim of ineffective assistance of counsel under

*Strickland*, a defendant must show (1) counsel's performance was deficient and (2) counsel's actions resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Evans*, 209 Ill. 2d 194, 220 (2004). First, I will analyze the objective reasonableness of defense counsel's conduct. The competence of trial counsel is to be determined by the totality of the counsel's conduct. *People v. Lemke*, 349 Ill. App. 3d 391, 398 (2004). "When a choice of trial strategy is based upon a misapprehension of the law, the claim is reviewable and counsel may, in fact, have been ineffective." *Id.* at 399. To sustain Scurlock's conviction, the State had to prove Scurlock had knowing possession of the ammunition found at the Saint Lawrence Avenue residence and had a prior felony conviction. 720 ILCS 5/24-1.1(A) (West 2020). Because Scurlock was not in actual possession of the contraband, the State had to prove constructive possession. *People v. Carter*, 339 Ill. App. 3d 876, 879 (2003). Constructive possession occurs when a defendant has knowledge of the presence of contraband and exercises immediate and exclusive control over the area where the contraband was found. *Id.* The rule that possession must be exclusive does not mean, however, that the possession may not be joint. *People v. Givens*, 237 Ill. 2d 311, 335 (2010). "If two or more people share the intention and power to exercise control, then each has possession." *Id.*

¶ 53    The majority states, given the State's overwhelming evidence, defense counsel's theory that the ammunition could have belonged to anyone living at the residence was the only viable strategy. Supra ¶ 38. However, I would find this strategy was not viable because it is contrary to precedent that constructive possession may be established despite joint possession of the area where the contraband is found. See *Givens*, 237 Ill. 2d at 335.

¶ 54    During trial, the State presented evidence that the police found one bullet inside a dresser

drawer in the basement bedroom. Several items belonging to Scurlock were found in the basement bedroom, including a piece of mail addressed to Scurlock that listed the Saint Lawrence Avenue residence as the forwarding address, Scurlock's temporary state identification card, a credit card in Scurlock's name, and pictures of Scurlock. In the common area of the basement, the police found an extended magazine and three .40 caliber bullets inside a drawer. In a different drawer and on a counter in the common area, the police found pieces of mail addressed to Scurlock, three of which listed the Saint Lawrence Avenue residence as the forwarding address. The police also found a store receipt for an order in Scurlock's name on top of the counter.

¶ 55     Contrary to established law on joint possession, defense counsel argued that the State could not prove Scurlock had constructive possession because Kenyada had access to the basement and elicited testimony that Kenyada was the lessee of the residence. In doing so, counsel also continuously admitted Scurlock lived in the basement bedroom, thereby conceding that Scurlock had constructive possession of the contraband. Counsel stated during opening statements, "the evidence will show that there was a sum total of one bullet found in Kevon Scurlock's room." Counsel also called Kenyada as a defense witness where she testified on cross-examination that Scurlock was on electronic monitoring at the Saint Lawrence Avenue residence, was living at the residence, and was staying in the basement. She further narrowed Scurlock's living arrangement to the basement when she testified that her 10-year-old daughter and Scurlock's co-defendant each stayed in one of the two bedrooms upstairs. Kenyada also testified that the co-defendant lived in Missouri and temporarily came to her residence for his children's birthdays. At the end of the trial, counsel repeatedly mentioned that the basement

1-22-0829

bedroom belonged to Scurlock during closing arguments.

¶ 56     The trial judge's repeated admonishments further evinced counsel's misapprehension of the law. The judge explained to counsel that Scurlock's failure to make an incriminating statement was not proof that he did not possess the contraband. When counsel argued that there was a lack of evidence of knowledge because Scurlock did not make an admission, the court informed counsel that "[y]ou cannot argue either before a judge or a jury defendant did not confess and argue that's in his favor. Because he has a right to remain silent and not say anything. If he doesn't say anything, how is that helpful to him at all?" The judge even interrupted counsel's closing remark and questioned his decision to mention Kenyada's testimony, stating "She did say both lived there pretty much at the time of the incident. So what did she add that's helpful to the defense that is?" See *People v. Baines*, 399 Ill. App. 3d 881, 898 (2010) ("Another factor which also contributes to a finding of ineffective assistance of counsel resulting in prejudicial and reversible error is the necessity of frequent intervention by the trial court to guide defense counsel through rudimentary trial procedures and to correct mistakes made by counsel."). However, counsel adamantly argued that Kenyada's testimony showed Scurlock did not have constructive possession of the contraband.

¶ 57     The judge and prosecutor recognized the importance of Kenyada's testimony and used it as a basis for conviction. Highlighting Kenyada's testimony during closing arguments, the prosecutor stated Kenyada "says that [Scurlock] was staying there, he lived there, he was in the basement." The trial judge relied on Kenyada's testimony in its finding of guilt, stating "Scurlock's mother *** indicates beyond a reasonable doubt in my opinion that Scurlock stayed in the basement. Her son stayed in the basement with the stuff in the basement *,** and the

- 26 -

bullet downstairs in the basement [was] attributable, in my opinion, to Kevon Scurlock."

¶ 58    The majority states that defense counsel had two available trial strategies: (1) call Kenyada as a witness or (2) argue that the State's evidence was insufficient. Supra ¶41. However, the majority fails to acknowledge that counsel's decision to call Kenyada was tainted by a misapprehension of the law, and in turn, helped reinforce the State's case. Even assuming counsel intended to make the State's evidence of constructive possession more tenuous through Kenyada's testimony that six other individuals lived at the residence, his strategy failed when her testimony established where each person stayed in the residence, including Scurlock. This type of assistance cannot be viewed as reasonable. Given counsel's multiple assertions about Scurlock's joint possession of the basement, which established Scurlock's guilt, I would find counsel's performance was deficient.

¶ 59    Furthermore, I would find counsel's deficient performance prejudiced Scurlock. Contrary to the majority's reasoning (supra ¶ 44), the State's evidence was not overwhelming. The State presented several pieces of evidence of habitation including pieces of mail addressed to Scurlock, photos of Scurlock, his credit card, and his identification card. Each item is only part of the evidence used to support an inference that a defendant controlled the location where the contraband was found. See generally *People v. Castino*, 2019 IL App (2d) 170298, ¶ 19 ("[c]ircumstantial evidence is proof of facts and circumstances from which the trier of fact may infer other connected facts that reasonably and usually follow according to common experience"); see also *People v. Maldonado*, 2015 IL App (1st) 131874, ¶ 29 (noting that mail is "part of the evidence used to support an inference that the defendant controlled the location where the contraband was recovered").

¶ 60     Indeed, this court found the aggregate of similar evidence insufficient to establish constructive possession. See *People v. Terrell*, 2017 IL App (1st) 142726, ¶ 19-31 (finding large men's clothes, two prescription bottles, an adult probation card bearing the defendant's name, a passport, and a framed photo depicting the defendant recovered at the apartment was insufficient evidence of habitation necessary to establish constructive possession). Additionally, the fact that the ammunition was found either inside a dresser drawer in the bedroom or inside a drawer in the common area further undermines the State's case. See *People v. Macias*, 299 Ill. App. 3d 480, 487 (1998) (finding no inference of defendant's knowledge of the contraband can be inferred where the contraband was not in plain view to the defendant); *Terrell*, 2017 IL App (1st) 142736, ¶ 30 ("Assuming arguendo-due to the presence of his passport, the prescription bottles, the adult probation card, the large men's clothes, and the framed picture in the living room and dining room-that [defendant] had some connection with the residence, the fact that the contraband was concealed in a compartment in the hallway closet undercuts the inference that he had knowledge of its existence.").

¶ 61     Had defense counsel not called Kenyada, the State would have had trouble showing defendant resided in the basement specifically, which would have weakened the inferences needed to establish both control and knowledge. Without Kenyada testifying as to where defendant and co-defendant stayed respectively, it would be difficult for the factfinder to differentiate between who owned the firearm (found upstairs) and bullets (found downstairs). By Kenyada testifying that co-defendant's area was upstairs, and defendant's area was in the basement, the picture became much clearer, as the court itself acknowledged. Also, there was no testimony of defendant's clothing in the basement bedroom. This is a fact defense counsel could

have used to support an argument that the State's evidence suggested only transient presence. and not residence such that inferences of control of the basement areas, and knowledge of the bullets, became reasonable.

¶ 62     Considering the totality of the evidence, Kenyada's direct testimony that Scurlock lived in the basement bedroom tipped the scale in favor of the State's circumstantial evidence. Kenyada's testimony was the crux of the trial judge's finding that Scurlock had constructive possession of the contraband. As previously stated, the judge found that Kenyada's testimony "indicates beyond a reasonable doubt in my opinion that Scurlock stayed in the basement" and showed the bullet found in the basement was "attributable" to Scurlock. Given the State's dubious evidence of habitation and the court's finding that Kenyada's testimony connected Scurlock to the basement bedroom, there is a reasonable probability that the results would have been different had counsel not presented Kenyada's testimony.

¶ 63     I would find that defense counsel rendered ineffective assistance. By misapprehending the law on joint possession, counsel conceded Scurlock had constructive possession of the contraband. Counsel's performance prejudiced Scurlock where Kenyada's testimony tipped the scale in favor the State's circumstantial evidence and was the crux of the trial court's finding that Scurlock had constructive possession of the contraband. I would reverse Scurlock's conviction and remand so that he may have a fair trial. Therefore, I respectfully dissent.